Kenneth DEITRICK, Sunbury Wetlands, Inc., Montie E. Peters and Randall W. Yoxheimer

v.

## NORTHUMBERLAND COUNTY

### Appeal of Kenneth Deitrick.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2003.

Decided April 1, 2004.

Stanley J. Burke, Jr., Pottsville, for appellant.

Michael M. Apfelbaum, Sunbury, for appellees, Sunbury Wetland, Inc., M. Peters and R. Yoxheimer.

BEFORE: COLINS, President Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

Kenneth Deitrick (Appellant) appeals from an adjudication and decree *nisi* of the Court of Common Pleas of Northumberland County (Chancellor) dissolving a preliminary injunction and authorizing the County of Northumberland (County) to proceed with the public auction of certain County-owned land. We affirm.

On May 30, June 6, and June 13, 2001, the County advertised a Notice of Sale of Real Estate (Notice of Sale) in the *Sunbury Daily Item* and *News Item* for the sale of three (3) parcels of County-owned real estate, including an 88–acre tract known and identified as Parcel # 35–122, Point Township, Northumberland County

(Parcel).[1]  Appellant submitted a timely bid for the Parcel in the amount of $156,000, along with a deposit of $15,600. Appellant was the highest bidder, and on August 21, 2001, at a public meeting of the County Board of Commissioners, he was awarded the bid for the Parcel.  Appellant's award was confirmed in a letter to him dated August 23, 2001, signed by the Assistant Chief Clerk of the County Board of Commissioners.

The County then learned that it had purchased the Parcel in 1974 with financial assistance under the Project 70 Land Acquisition and Borrowing Act (Project 70 Act).[2]  As a result, the use of the Parcel was restricted by law to "recreation, conservation and historical purposes, as said purposes are defined in [the Project 70 Act]." 72 P.S. § 3946.20(c).  This restriction did not appear in the deed of acquisition by the County, nor was it reflected in an appraisal that the County had ordered on February 15, 2001, which valued the Parcel at $155,000.  The County's Notice of Sale made no mention of the restriction.

In response to a request by the County, the General Assembly enacted legislation that purported to allow the County to convey the Parcel free of the Project 70 Act restrictions on the Parcel.  That legislation, however, imposed the following new restriction on the Parcel:

THE DEED OF CONVEYANCE FOR [THE PARCEL] SHALL CONTAIN A CLAUSE THAT THE PROPERTY SHALL BE USED FOR LAND CONSERVANCY PURPOSES CONSISTENT WITH THE PURPOSES OF THE [PROJECT 70 ACT].

H.B.1974, 185th Gen. Ass., Reg. Sess. (Pa. 2002) (Act 2002–228).  Act 2002–228 also required the proceeds from any sale of the Parcel to be used in a specified manner and prohibited the County from selling the Parcel for less than fair market value.

After Act 2002–228 was enacted, the County, notwithstanding Appellant's prior bid award, advertised that it would be accepting sealed bids for the Parcel through February 25, 2003.  The Notice of Sale accompanying the second bid announcement specifically referred to the Project 70 Act restriction on the Parcel imposed by Act 2002–228.

On February 21, 2003, Appellant filed a complaint in equity and petition for preliminary injunction.  In his complaint, Appellant argued that the August 23, 2001 letter confirming the bid award constituted a valid and enforceable contract for the sale of the Parcel.  Appellant sought, *inter alia,* an order that the County specifically perform this purported sales agreement and convey the Parcel to Appellant according to the terms set forth in the first

---

1.  The Notice of Sale provided as follows:
     Each bid will be enclosed in separate envelopes clearly marked "Bid for Real Estate" along with the address of the respective parcel bid.
     The successful bidder will be responsible for all costs incurred by the County relative to the transfer of the real estate.
     Sealed bids will be received by the County of Northumberland in the Office of the County Controller, Mr. Charles E. Erdman, Jr., Northumberland County Administration Center, 399 South 5th Street, Sunbury, PA 17801 until 10:00 A.M., prevailing time on Tuesday, June 19th, 2001.

     All bids advertised shall be accompanied by a bank check, a certified check, or a cashier's check in the amount of 10% of the bid. The successful bidder of each parcel will accept ownership "as is" with no warranty made by the Seller, express or implied as to condition of title, zoning, physical condition or suitability for use.  Parcels may be located in flood zone.
     . . . .
     Reproduced Record 11a (R.R. ___).

2.  Act of June 22, 1964, Spec. Sess., P.L. 131, 72 P.S. §§ 3946.1–3946.22.

Notice of Sale.[3] In his petition for preliminary injunction, Appellant asked the Chancellor to enjoin the County from re-bidding, selling or otherwise conveying the Parcel to any person or entity other than Appellant[4] pending a decision on his request for permanent injunctive relief.

The Chancellor conducted a hearing on Appellant's petition for preliminary injunction on February 24, 2003. During the hearing, the Chancellor stated, "[W]e will grant a preliminary injunction, as far as tomorrow's bidding goes, and then it will be eventually scheduled for some sort of a hearing. . . ." N.T. 2/24/03 at 6. The Chancellor later reiterated his bench ruling by stating "I think we're at the point where preliminary injunctions are being issued and continued[5] by the bench or on the bench. There will be no sale tomorrow.

And do not readvertise it until further Order of Court. . . ." *Id.* at 13.

The Chancellor entered an order, dated February 24, 2003, enjoining the County from proceeding with the auction of the Parcel scheduled for February 25 pending a final hearing or further order of the court.[6] By subsequent order, dated February 26, 2003, the Chancellor scheduled a final hearing on the preliminary injunction for April 3, 2003 and directed the parties to prepare for argument on a number of substantive issues related to Appellant's complaint in equity. Prior to the final hearing, Sunbury Wetlands, Inc., Monte E. Peters and Randall W. Yoxheimer (Intervenors) filed a petition to intervene in this matter.[7] The Chancellor granted intervention and the parties proceeded to the final hearing on April 3, 2003.[8]

3. In addition to specific performance, Appellant sought collateral or incidental damages, costs and attorney fees. Appellant later agreed to strike those prayers for relief in order to ensure that County would, in turn, admit all of the factual allegations in Appellant's complaint. Notes of Testimony 2/24/03 at 3–4 (N.T. ___).

4. Appellant's complaint in equity also demanded ancillary relief: "Preliminarily enjoin Defendant, until final hearing, and permanently thereafter, from bidding, selling, or otherwise conveying the [Parcel] to any person or entity other than [Appellant]." R.R. 8a.

5. The Chancellor's dual reference refers to another hearing conducted on February 24, 2003, in the matter of *Robert C. Snyder Farms, Inc. v. Northumberland County Board of Commissioners*, No. EQ–03–1779. That case, which is nearly identical factually to the case *sub judice*, involved the County's acceptance of a bid at the same 2001 auction for another parcel of land subject to Project 70 Act restrictions. At the conclusion of the *Snyder* hearing, the Chancellor continued a preliminary injunction that was apparently entered on February 19, 2003, thereby enjoining County from proceeding with the second auction that is also at issue in the instant matter.

6. In his Adjudication, the Chancellor stated that he granted preliminary injunctive relief on February 19, 2003, and extended such relief "until the time of a final hearing by an order entered on February 24, 2003." Adjudication at 5. Although this may reflect the procedural history of the companion *Snyder* case, the certified record indicates that a preliminary injunction was not entered in this matter until February 24, 2003. The effect of the Chancellor's February 26 order, discussed more fully above, was to extend the preliminary injunction until the final hearing on April 3, 2003.

7. Sunbury Wetlands, Inc., a non-profit organization, was one of the bidders in the second auction. Peters and Yoxheimer, both members of the board of directors of Sunbury Wetlands, also sought to intervene in Appellant's action as taxpayers of Northumberland County.

8. The County Board of Commissioners was not represented at the hearing and has declined to participate in this appeal. In its Answer to Appellant's complaint, County agreed that ordering specific performance in Appellant's favor would be an appropriate remedy.

From the evidence presented at the hearing, the Chancellor concluded that no contractual relationship existed between Appellant and the County relative to the sale of the Parcel. Accordingly, the Chancellor entered an Adjudication and Decree *Nisi* on April 10, 2003 dissolving the preliminary injunction and authorizing the County "to proceed with independent appraisals and an informative advertisement for the receipt of sealed bids as to the sale of the [Parcel] consistent with the requirements of Act 2002–228." Decree *Nisi,* 4/10/03. No exceptions were filed, and on April 30, 2003, Intervenors filed a praecipe requesting the Prothonotary of Northumberland County to enter the decree *nisi* as a final decree pursuant to Pa.R.C.P. No. 227.4(1).[9] Appellant filed a timely notice of appeal to this Court on May 8, 2003.

■ As a preliminary matter, we must determine whether this appeal is properly before us since Appellant, rather than filing exceptions, chose to appeal directly from the Chancellor's decree *nisi.* A decree *nisi* has been defined as "an interlocutory judgment or provisional decree that becomes final upon a motion by a party unless cause can be shown against it." *Chalkey v. Roush,* 569 Pa. 462, 466 n. 5, 805 A.2d 491, 493 n. 5 (2002) (quoting Black's Law Dictionary (7th Ed.1999)). In *Chalkey,* our Supreme Court clarified what it perceived as confusion in the lower courts regarding post-trial practice in equity actions. The Court held that the mandatory post-trial motion procedures set forth in Pa.R.C.P. No. 227.1 apply in both law and equity cases, and that "there is no excuse for a party's failure to file post-trial motions from a trial court's order following an equity trial." *Chalkey,* 569 Pa. at 469, 805 A.2d at 496. Here, Appellant did not file exceptions to the Chancellor's decree *nisi,* in apparent violation of the *Chalkey* rule. However, the Pennsylvania Rules of Appellate Procedure contain an exception to standard post-trial procedures that is applicable here. Specifically, Rule 311 states:

(a) **General Rule.** An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

. . . .

■ (4) *Injunctions.* ... A decree nisi granting or denying an injunction is not appealable as of right under this rule, *unless* the decree nisi (i) grants an injunction effective upon the entry of a decree nisi or (ii) *dissolves a previously granted preliminary injunction effective upon the entry of a decree nisi.*

Pa. R.A.P. 311(a)(4) (emphasis added). Here, the effect of the Chancellor's decree *nisi* was the immediate dissolution of the preliminary injunction that had prevented the County from proceeding with the second auction of the Parcel. Rule 311 permits an appeal from a decree *nisi* under these specific circumstances and, accordingly, we shall treat Appellant's action as an appeal as of right.[10]

We turn next to Appellant's substantive claims. They are as follows: the Chancellor erred or abused his discretion in (1)

---

9. It states "the prothonotary *shall,* upon praecipe of a party: (1) enter judgment upon the verdict of a jury or the decision of a judge following a trial without jury, *or enter the decree nisi as the final decree,* if (a) no timely post-trial motion is filed ...". Pa.R.C.P. No. 227.4(1) (emphasis added).

10. An order dissolving a preliminary injunction is equivalent to the refusal of a preliminary injunction. *Rubin v. Bailey,* 398 Pa. 271, 274, 157 A.2d 882, 883 (1960). This Court's scope of review in such a case is to determine if there existed any reasonable grounds for the action of the court below. *Nunemacher v. Borough of Middletown,* 759 A.2d 57, 60 n. 4 (Pa.Cmwlth.2000).

granting Intervenors' petition to intervene; (2) finding that no valid and enforceable contract for the sale of the Parcel existed between Appellant and County; and (3) retroactively applying Act 2002–228 so as to interfere with the prior contractual relationship between Appellant and County. Brief of Appellant at 9.

■ Appellant first challenges the Chancellor's decision to grant Intervenors' petition to intervene. Intervention is governed by Pennsylvania Rule of Civil Procedure 2327, which provides, in pertinent part, as follows:

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> . . . .
>
> ■ (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.C.P. No. 2327. Questions of intervention are within the sound discretion of the lower court and unless there is a manifest abuse of such discretion, its exercise will not be interfered with on review. *Wilson v. State Farm Mutual Automobile Ins. Co.*, 512 Pa. 486, 492, 517 A.2d 944, 947 (1986).

■ Here, the Chancellor determined that Intervenors Peters and Yoxheimer, as taxpayers of Northumberland County, had standing to participate in an action involving the sale of county-owned real estate. There is no basis for disagreeing with the Chancellor's finding since the taxpayer status of these two individuals was undisputed. The Chancellor also found that Sunbury Wetlands, Inc. had a "sufficient interest" in the matter. We agree. Sunbury Wetlands, Inc., as a bidder in the second auction, clearly had an interest in the outcome of Appellant's action seeking specific performance of the sales agreement he alleged was the result of the first auction. It is also significant that the County, as defendant below, admitted as true all of the averments in Appellant's complaint and chose not to appear at the final hearing. Intervenors were therefore in the best position to assert the common interest of the taxpayers of Northumberland County in the face of governmental action that would otherwise go unchallenged. *See Rainey v. Borough of Derry*, 163 Pa.Cmwlth. 606, 641 A.2d 698 (1994) (discussing the requirements for taxpayer standing). We cannot discern a manifest abuse of discretion by the Chancellor in permitting Intervenors to intervene.[11]

■ Turning to Appellant's second issue, the Chancellor concluded that a contractual relationship between Appellant and County did not exist. Specifically, the Chancellor found that, in light of the original Project 70 Act restrictions, the County was precluded from selling the Parcel via the first auction. The language of Section

---

11. Intervenors argue that the issue of their standing to intervene is now waived since Appellant failed to raise any objection after the Chancellor indicated on the record at the final hearing that he was granting intervention. R.R. 125a–126a. *See In re Estate of Schram*, 696 A.2d 1206, 1209 n. 4 (Pa. Cmwlth.1997) ("a party may waive its opportunity to contest the standing of another party by not raising the issue in a timely manner."). Intervenors have accurately recited the events at the hearing; however, Appellant did file a written answer on April 3, 2003 objecting to the petition to intervene. In any event, even if we were to agree with Intervenors on the waiver issue, it would only be an alternative basis for rejecting Appellant's first issue. We have already reviewed the merits of the Chancellor's ruling and, for the reasons set forth above, find no manifest abuse of discretion in permitting Intervenors to intervene.

20 of the Project 70 Act is clear in this regard:

> (b) No lands acquired with funds made available under this act shall be *disposed of* or used for purposes other than those prescribed in this act *without the express approval of the General Assembly*
>
> . . . .

72 P.S. § 3946.20(b) (emphasis added). It is undisputed that the Parcel was originally acquired by the County with Project 70 Act funds and that the County did not obtain the express approval of the General Assembly prior to the first public auction of the Parcel. The County violated the express language of the Project 70 Act and, on that basis alone, the Chancellor committed no error of law or abuse of discretion in declaring the first auction a nullity.[12]

■ The Chancellor also relied upon certain provisions of the County Code to find that a binding contract was never created between Appellant and the County. For instance, Section 504(b) of the County Code[13] provides that "[w]here any official document, instrument or official paper is to be executed by the county commissioners, it shall be done by at least two of the commissioners and attested by the chief clerk who shall affix the county seal thereto." 16 P.S. § 504(b). The only writing of record in this case was the award notice of August 23, 2001, addressed to Appellant and signed by the Assistant Chief Clerk of the County's Board of Commissioners. We agree with the Chancellor that this letter was simply a step in the process. While it may have showed the County's intention to sell the Parcel to Appellant, it did not in and of itself constitute a formal written contract of sale. Appellant argues that Section 2306 of the County Code, 16 P.S. § 2306, governs the sale of county-owned real estate and that the County complied with that section in this case. While it is true that Section 2306 generally authorizes the board of commissioners to sell county-owned property, this does not, in our view, obviate the need for a formal written contract memorializing such a transaction. As the Chancellor astutely observed, "[t]o argue that the governing body of a county can be bound by anything less than a written document executed by a majority of the Board of Commissioners, especially as to the sale of valuable and unique (situated along the banks of the Susquehanna River) property, is contrary to sound, recognized appellate authority as well as public policy." Adjudication at 6–7 (citations omitted).

In sum, we hold that the Chancellor did not abuse his discretion in permitting Sunbury Wetlands, Inc., Monte E. Peters and Randall W. Yoxheimer to intervene in this action. We also agree with the Chancel-

---

**12.** Appellant counters that the Project 70 Act does not prohibit the County from selling restricted land but, in fact, contemplates that such transactions may occur. Appellant cites the following provision in support of his argument:

> (d) Should the provisions of this act as they are applicable to the political subdivisions of the Commonwealth be willfully violated, it shall be the duty of the governing body of said subdivision or of its successor to reimburse the Commonwealth in the amount of the aid rendered to it by the Commonwealth in the acquisition of the land in question plus six per cent interest compounded semi-annually from the date of receipt of said aid until the date of said reimbursement.

72 P.S. § 3946.20(d). Appellant's argument is unpersuasive. Just because the Project 70 Act provides penalties for noncompliance does not mean that a chancellor in equity may not stop a sale of Project 70 land being conducted in violation of the act.

**13.** Act of August 9, 1955, P.L. 323, 16 P.S. § 504(b).

lor's determination that the existence of a contractual relationship between Appellant and County for the sale of the Parcel was never established.[14] Thus, there were reasonable grounds for the Chancellor's decision to dissolve the preliminary injunction and direct that new bids for the Parcel be received following reappraisal of the Parcel and an informative advertisement advising prospective bidders of applicable Project 70 Act restrictions. As the Chancellor observed,

> Now that it is clear what the legislature's requirements are for the disposition of [the Parcel], all persons should be provided an equal opportunity to now bid thereon. After all, the original bidding process was flawed in the sense that there was uncertainty on the part of the bidders and the County as far as the nature and extent of any restrictions, if any, as to the purchasers' future use of the land. This can only be rectified by reinstituting the bidding process again.

Adjudication at 9.

Accordingly, and in light of the foregoing analysis, we affirm the decree of the Chancellor.

### ORDER

AND NOW, this 1st day of April, 2004 the Adjudication and Decree *Nisi* entered by the Court of Common Pleas of Northumberland County in the above-captioned matter on April 10, 2003 is hereby affirmed.

---

14. Because of this absence of contractual relationship, we need not consider Appellant's third issue on appeal: that the Chancellor erred in retroactively applying Act 2002–228 so as to interfere with that alleged contractual relationship.