Ann M. FELDMAN, Appellant

v.

**BOARD OF SUPERVISORS OF EAST CALN TOWNSHIP, Progressive Housing Ventures, LLC, J. Loew & Associates, Inc., and Borough Council of The Borough of Downingtown.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 14, 2012.

Decided July 12, 2012.

Samuel C. Stretton, West Chester, for appellant.

David A. Malman, West Chester, for appellee East Caln Township.

Louis J. Colagreco, Jr., Exton, for appellees Progressive Housing Ventures, LLC and J. Loew & Associates, Inc.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Ann M. Feldman (Objector) appeals from the June 27, 2011, order of the Court of Common Pleas of Chester County (trial court) which affirmed the order of the Board of Supervisors (Board) of East Caln Township (Township) granting the conditional use application of Progressive Housing Ventures, LLC and J. Loew & Associates, Inc. (together, Developers) to construct multi-family dwelling units on land in the Township that is owned by the

Borough of Downingtown (Borough). We reverse.

The subject of the application is a 23-acre property in the Township composed of parcels 40–1–23, 40–1–23.1, and part of 11–4–23 (Property).[1] Developers propose to build 70 multi-family dwellings on the 7-acre parcel, 40–1–23, located in the Township's R–4 Low Density Cluster Residential zoning district. Parcel 40–1–23 is currently used by the Borough as a compost facility and for storage, and it is not, and has never been, used for public park purposes. Parcels 40–1–23.1 and 11–4–23 are currently used for public park purposes. A significant amount of the Property is currently impacted by environmental contamination, and Developers propose remediation of most of the Property.

Through an easement from the Borough, Developers also propose to use the adjacent Borough parkland on parcel 40–1–23.1 as open space and for the management of stormwater discharge associated with the development including Fourth Lake, a pond located on the parcel.

Developers and the Borough entered into an agreement of sale (Agreement), with subsequent amendments, to convey title to parcel 40–1–23 and to grant Developers an easement on parcel 40–1–23.1 subject to the Township's approval of the proposed development. (Reproduced Record (R.R.) at A–1184 –A–1203; A–1377–1388.)[2] To that end, Developers filed the instant application for conditional use approval of the multi-family dwellings use on parcel 40–1–23. (*Id.* at A–1293–A–1298.)[3]

---

1. Parcels 40–1–23.1 and 11–4–23 are dedicated parklands and extend into the neighboring Borough. These parcels are part of a larger 40–acre group of Borough-owned parcels that comprise Kardon Park. The Borough used funds from the Project 70 Land Acquisition and Borrowing Act (Act 70), Act of June 22, 1964, Special Sess., P.L. 131, *as amended*, 72 P.S. §§ 3946.1–3946.22, to purchase parcel 40–1–23.1.

   Article 8, section 15 of the Pennsylvania Constitution is entitled "Project '70'" and states, in pertinent part:

   [T]he Commonwealth may be authorized by law to create debt and to issue bonds in the amount of seventy million dollars ($70,000,-000) ... for participation by the Commonwealth with political subdivisions in the acquisition of land for parks, reservoirs and other conservation and recreation and historical preservation purposes, subject to such conditions and limitations as the General Assembly may prescribe.

   Pa. Const. art. VIII, § 15.

   Pursuant to the foregoing constitutional authority, the General Assembly enacted section 2 of Act 70 which authorizes the creation and liquidation of indebtedness of $70,000,000 for the acquisition of lands for recreation, conservation, and historical purposes in counties where public ownership of land for recreation purposes is less than 10% of the total land area or where there is an urban area of more than 25,000 persons. 72 P.S. § 3946.2. Under section 17(d), political subdivisions may acquire land for such purposes "[b]y purchase agreement or by eminent domain proceedings in the manner provided by applicable provisions of law which may govern land acquisitions for such purposes by such political subdivision...." 72 P.S. § 3946.17(d).

2. In yet another related proceeding, on November 17, 2011, the Orphans' Court of Chester County granted the Borough's and Developers' petition for a declaration that no court approval is required for the easement under the Donated or Dedicated Property Act (DDPA), Act of December 15, 1959, P.L. 1772, *as amended*, 53 P.S. §§ 3381–3386. Objector has also appealed that Orphans' Court order in *In re Council of the Borough of Downingtown*, (Pa.Cmwlth., 2205 CD.2011).

3. Section 225–35.A.(4)(b) of the Township's Zoning Ordinance states:

   (4) In evaluating an application to the Board of Supervisors for a conditional use, the Board shall require the applicant to provide information to indicate that the standards and criteria have been met. The applicant shall submit a report which describes how the standards and criteria have

Objector was granted party status and hearings before the Board ensued.

Prior to the filing of the conditional use application, a proposed amendment to the Township's Zoning Ordinance was under consideration that would permit a multi-family dwelling use as a conditional use in the Township's R–4 zoning district. On June 30, 2010, the Board enacted Ordinance No.2010–01, amending section 225–7 of the Township's Zoning Ordinance to allow multi-family dwellings as a conditional use in the R–4 zoning district.[4]

On July 5, 2010, the Board issued a decision granting Developers' application for a conditional use and imposing a number of conditions on development. (R.R. A–43—A–55.) Specifically, the Board concluded:

[T]he desire of the Township [is] entirely consistent with the stated desire of objectors, i.e., that the existing public park use of Tax Parcel No. [40–1–23.1] (subject to possible future development of a small portion upon Orphans' Court approval) and the part of Tax Parcel No. 11–4–23 located in [the] Township, **be maintained.** Approval of the revisions to the R–4 Zoning District and this Application will add two distinct and signif-

---

actually been met or will be met to insure that:

\* \* \*

(b) The proposed use will satisfy all of the relevant provisions and requirements of the Subdivision and Land Development Ordinance [(SALDO)] [Chapter 185], as amended, and any other applicable ordinance, code and/or regulation.

4. Ordinance No.2010–01 amended the definition of "open space" in section 225–3 of the Zoning Ordinance as "[a]n area to remain in a substantially undeveloped condition in perpetuity providing for natural resource preservation and/or passive recreational uses including public access to same." With respect to "open space", Section 225–7.F.(1)(f) of Ordinance No.2010–01 states that "[a] minimum of 40% of the tract area shall consist of open space, complying with the provisions of § 225–7 F(4)." In turn, section 225–7.F.(4) provides, in pertinent part:

(a) A minimum of 40% of the tract to be developed shall be designed, restricted and used as open space ("open space").

(b) Areas counted for the open space requirement may be used in whole or in part for passive recreational uses and for natural resource preservation, or in any manner similar thereto; provided, however, that the type of recreation uses permitted within open space areas shall be limited to those which are appropriate based upon the prevailing environmental conditions and as approved by the Township. Under no circumstances are motorized vehicles authorized within any common open space areas, except for the performance of public safety services or maintenance of the open space area and the governing document restricting the use of open space areas shall so specify.

\* \* \*

(d) Areas set aside for open space shall be significant in size and character. Strips of land less than 100 feet in width shall not be counted towards open space. Areas set aside for open space shall be suitable for the designated purpose and shall be consistent with the comprehensive plan for future land use in the Township. An open space parcel shall contain no structure other than a structure related to permitted open space uses, stormwater management or utilities.

\* \* \*

(f) Open space may be dedicated to the Township if accepted by the Township or to the [Borough] if not accepted by the Township. Proposed open space already owned by the Borough may be retained in the Borough's ownership....

In addition, with respect to stormwater management, section 225–7.F.(3)(f) of Ordinance No.2010–01 provides that "[t]he ongoing management of stormwater on the tract, shall be accomplished in accordance with the [Township's SALDO] [Chapter 185]...." Finally, Ordinance No.2010–01 also amended the Township's zoning map by rezoning that part of Tax Parcel No. 11–4–23 located in the Township from the R–1 Single Family Detached Residential zoning district to the R–4 zoning district.

icant protections to the use of such ground: 1) zoning open space requirements relative to development of 70 dwelling units on the unrestricted 7± acre parcel [40-1-23], and 2) deed restrictions prohibiting future development of such parkland and providing for its proper maintenance. . . .

As to the 7± acres of unrestricted land, the Board finds it to be in the best interest of the Township and its residents that the existing compost/storage use of such land, owned and operated by a tax exempt political subdivision, be converted into an environmentally remediated, tax revenue generating property, providing affordable housing within the Township.

(*Id.* at A–50—A–51) (emphasis in original).

■ In addition, as a condition of approval, the Board stated that "[i]f re-

quired, the Borough shall obtain the removal of any Project 70 [5] deed restrictions affecting the proposed development of the Property." (R.R. at A–53.) Objector appealed the Board's decision and the trial court affirmed. Objector then filed the instant appeal.[6]

In this appeal, Objector claims that the Board erred in granting the conditional use application for three reasons: [7] (1) Developers did not satisfy the requirements of the Township's Zoning Ordinance; (2) the open space and storm water management requirements were met through an easement on adjacent Borough parkland which requires court approval under the DDPA and the Public Trust Doctrine; and (3) the procedure was defective and violated section 917 of the Municipalities Plan-

---

5. Section 20 of Act 70 provides, in pertinent part:

(b) No lands acquired with funds made available under this act shall be disposed of or used for purposes other than those prescribed in this act without the express approval of the General Assembly: Provided, That . . . a political subdivision, as owner of such lands, may issue permits, licenses or leases for the exploration, development, storage and removal of oil, gas or other minerals, or for the installation and use of water, gas, electric, telephone, telegraph, oil or oil products lines, under reasonable regulations prescribed by such owner consistent with the primary use of such lands for "recreation, conservation and historical purposes."

(c) The deeds of all lands acquired under the provisions of this act shall contain the following clause:

This indenture is given to provide land for recreation, conservation and historical purposes, as said purposes are defined in [Act 70].

(d) Should the provisions of this act as they are applicable to the political subdivisions of the Commonwealth be willfully violated, it shall be the duty of the governing body of said subdivision or of its successor to reimburse the Commonwealth in the

amount of the aid rendered to it by the Commonwealth in the acquisition of the land in question plus six per cent interest compounded semi-annually from the date of receipt of said aid until the date of said reimbursement. . . .

(e) The Commonwealth of Pennsylvania may specifically enforce the provisions of this requirement by application to a court of equity or may invoke other remedies deemed appropriate under the circumstances.

72 P.S. § 3946.20(b)—(e).

6. In a land use appeal where the trial court does not take additional evidence, our scope of review is limited to determining whether the local governing body abused its discretion or committed an error of law. *In re Thompson,* 896 A.2d 659, 666 n. 4 (Pa.Cmwlth. 2006), *appeal denied,* 591 Pa. 669, 916 A.2d 636 (2007). The governing body abuses its discretion when its findings of fact are not supported by substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).

7. In the interest of clarity, we consolidate and reorder the claims raised in this appeal.

ning Code (MPC).[8]

Objector first claims that the Board erred in granting the conditional use application because Developers did not satisfy the objective requirements of the Township's Zoning Ordinance. More specifically, Objector claims that the Board erred in determining that Developers met the open space and stormwater management requirements of the Ordinance through the use of parcel 40–1–23.1. We agree.

■■■ It is well settled that municipalities of the Commonwealth possess only those powers expressly granted to them by the General Assembly. *In re Appeal of Maibach, LLC,* 26 A.3d 1213 (Pa.Cmwlth. 2011). Section 909.1(b)(3) of the MPC[9] grants a municipality's governing body authority to render final adjudications on applications for conditional uses. A conditional use is one to which the applicant is entitled provided that the specific standards of the zoning ordinance are met. *In re Thompson,* 896 A.2d at 670. An applicant seeking a conditional use must show compliance with the express standards of the zoning ordinance that relate to the specific conditional use. *Id.* If the applicant demonstrates compliance with the zoning ordinance, the governing body must grant the application unless objectors introduce sufficient evidence that the proposed use will have a detrimental effect on the public health, safety, and welfare. *Id.*[10]

■■■ However, a governing body may impose reasonable conditions on the grant of a conditional use. Section 913.2 of the MPC;[11] *Levin v. Board of Supervisors of Benner Township, Centre County,* 669 A.2d 1063 (Pa.Cmwlth.1995), *aff'd,* 547 Pa. 161, 689 A.2d 224 (1997). A board is permitted to impose reasonable conditions on the use of a property to mitigate any potential adverse impacts from the proposed use. *Edgmont Township v. Springton Lake Montessori School,* 154 Pa.Cmwlth. 76, 622 A.2d 418 (1993). Thus, "[t]he proper function of conditions is to reduce the adverse impact of a use allowed under a special exception, not to enable the applicant to meet his burden of showing that the use which he seeks is one allowed by the special exception...." *Blancett–Maddock v. City of Pittsburgh Zoning Board of Adjustment,* 6 A.3d 595, 601 (Pa.Cmwlth. 2010) (citation omitted).

■■■ In order to meet the open space and stormwater management requirements of the Township's Ordinance, the Borough (Seller) conveyed an easement in parcel 40–1–23.1 to Developers (Buyer) in the Agreement. The Agreement identifies parcel 40–1–23.1 as the "Easement Properties" and states, in pertinent part:

> [B]uyer intends to construct stormwater management facilities and grading changes serving its proposed development on the Easement Properties, and Buyer may also need to construct a secondary driveway on the Easement Properties providing access to Norwood Road, which secondary driveway would be dedicated to Seller. Buyer may also use the Easement Properties to mitigate the loss of wetlands on the Property as a result of Buyer's development. In addi-

---

**8.** Act of July 31, 1968, P.L. 805, added by the Act of June 23, 2000, P.L. 495, *as amended,* 53 P.S. § 10917.

**9.** Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1.

**10.** "Because the law regarding conditional uses and special exceptions is virtually identical, the burden of proof standards are the same for both." *In re Thompson,* 896 A.2d at 670 (citation omitted).

**11.** Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10913.2.

tion, the Easement Properties will serve as a natural buffer. Accordingly, Buyer's obligations hereunder are conditioned upon Buyer and Seller entering into a mutually acceptable easement and restriction agreement permitting Buyer to construct its proposed stormwater management, grading, road improvements and wetlands mitigation areas on the Easement Properties; provided, however, that the location and scope of such easements shall be designed, defined and placed, to the extent feasible, so that such easements will not materially impair the development of the Additional Property in the manner contemplated by the parties in the First Amendment.

(R.R. at A–1185, 1190.)

In turn, the First Amendment to the Agreement identifies parcel 40–1–23.1 as the "Additional Property," and purports to sell that parcel to Developers. (R.R. at A–1378.) However, the Second Amendment executed by the parties states, in relevant part:

> [T]he parties agree that the Property and the Additional Property will exclude the area ... containing the ponds, millrace, Victims' Memorial, public parking areas, trail areas, and surrounding open space/park areas (the "Park Property"). The Park Property will, therefore, be retained by Seller and will not be conveyed to Buyer.... Seller agrees to grant to Buyer, at Closing, such free, uninterrupted perpetual and/or temporary (as applicable) easements over, under and through the Park Property as Buyer reasonably requires in order to (i) construct any improvements and perform any work on the Park Property shown on or required by the Conditional Use Approval, approved final subdivision and/or land development plans, or by other governmental approvals, including

any environmental remediation, (ii) construct or extend utilities to serve the development of all or any part of the remainder of the Property, Additional Property or Option Property, (iii) discharge storm water into the ponds, and (iv) maintain such improvements to the extent of any ongoing maintenance responsibility of the Buyer or of any community association organized to maintain common amenities of Buyer's development.

(*Id.* at A–1385.)

As noted above, section 20(b) of Act 70 specifically provides that "[n]o lands acquired with funds made available under this act shall be disposed of or used for purposes other than those prescribed in [Act 70] without the express approval of the General Assembly...." 72 P.S. § 3946.20(b). In addition, section 20(e) of Act 70 states that "[t]he Commonwealth of Pennsylvania may specifically enforce the provisions of this requirement by application to a court of equity or may invoke other remedies deemed appropriate under the circumstances." 72 P.S. § 3946.20(e). This Court has repeatedly held that only the Commonwealth, and not private citizens, has the authority to enforce the restrictions relating to the use of parcels purchased with Act 70 funds for recreation, conservation, and historical purposes. *White v. Township of Upper St. Clair,* 799 A.2d 188, 199 (Pa.Cmwlth.2002); *Humphreys v. Cain,* 83 Pa.Cmwlth. 176, 477 A.2d 32, 35 (1984); *Quirk v. Schuylkill County Municipal Authority,* 54 Pa. Cmwlth. 619, 422 A.2d 904, 905 (1980).

The record in this case does not show that the General Assembly granted the Borough the authority to convey an encumbrance to Developers to use parcel 40–1–23.1 to meet the open space and stormwater management requirements of the Township's Ordinance, or to empower De-

velopers to construct or maintain the facilities, improvements, road improvements, or driveways related thereto. Thus, the uses to which parcel 40–1–23.1 is subject under the Agreement and its amendments are *ultra vires* and without effect in the absence of prior approval by the General Assembly. *See Deitrick v. Northumberland County,* 846 A.2d 180, 186 (Pa. Cmwlth.), *appeal denied,* 579 Pa. 695, 856 A.2d 836 (2004) ("[I]t is undisputed that the Parcel was originally acquired by the Court with [Act 70] funds and that the County did not obtain the express approval of the General Assembly prior to the first public auction of the Parcel. The County violated the express language of [Act 70] and, on that basis alone, the Chancellor committed no error of law or abuse of discretion in declaring the first auction a nullity.") (footnote omitted).[12]

As the Pennsylvania Attorney General's Office explained 40 years ago:

> [R]egarding the authority of the Supervisors of Hazle Township, Luzerne County, to grant a right-of-way over land of the township, acquired under [Act 70], . . . [t]he proposed right-of-way will have a width of 85 feet and will contain 8.27 acres of land, to be used by the Pennsylvania Power and Light Company.
>
> Section 20(b) of [Act 70] does authorize exploitation of the natural resources of certain public utility uses, provided that such uses are under "reasonable regulations . . . consistent with the pri-

mary use of such lands for 'recreation, conservation and historical purposes.'"

> Court adjudications and opinions of this department interpreting [Act 70] have held that its primary purpose is to provide and preserve areas acquired under its provisions for recreation, conservation and historical purposes.
>
> The liberalizing of uses of these land areas for purposes other than those authorized by the Act would naturally tend to thwart, defeat, and destroy the results expressly desired by the General Assembly.
>
> [I]t is the opinion of this department that the Supervisors are unauthorized under present law to grant an 85 foot wide electric power line right-of-way over land of the township purchased with [Act 70] funds.

Op. Pa. Att'y Gen. 102 (1972) at 21–22.

As a result, the Board erred in granting the conditional use application and imposing a condition that, "[i]f required, the Borough shall obtain the removal of any Project 70 deed restrictions affecting the proposed development of the Property." (R.R. at A–53.) As outlined above, the removal of the Act 70 deed restrictions is required prior to the Developers' use of parcel 40–1–23.1 to meet the open space and stormwater management requirements of the Township's Zoning Ordinance. In addition, the removal of the Act 70 deed restriction requires an enactment by the General Assembly, an exercise of legislative discretion not subject to executive or judicial review.[13] Thus, the instant

---

12. *See also Steeley v. Richland Township,* 875 A.2d 409, 414 (Pa.Cmwlth.2005) (holding that a township's lease of open space to the local YMCA violated the terms of the zoning ordinance governing the use of open space because the plan for development included prohibited non-recreational uses, parking spaces, access roads, and a stormwater detention/retention basin).

13. *See* Pa. Const. art. II, § 1 ("The legislative power of this Commonwealth shall be vested in a General Assembly. . . ."); Pa. Const. art. II, § 15 ("[A]nd for any speech or debate in either House [the members of the General Assembly] shall not be questioned in any other place."); *Pennsylvania State Association of County Commissioners v. Commonwealth,* 545 Pa. 324, 331, 681 A.2d 699, 702 (1996) ("[A]

matter is distinguishable from those cases in which a reasonable assurance of compliance with an ordinance's requirements is sufficient to support the grant of a special exception or a conditional use because there is no indication in this record that parcel 40–1–23.1 can ever be used as currently proposed. *See Broussard v. Zoning Board of Adjustment of City of Pittsburgh*, 589 Pa. 71, 84, 907 A.2d 494, 502 (2006) ("[W]e conclude that, where the plan, as submitted, addresses all of the ordinance's prerequisites for the special exception sought, and reasonably shows that the property owner is able to fulfill them in accordance with the procedures set forth by the zoning code (as reasonably interpreted by the board), a reviewing court should not reverse the grant of such an exception on the sole basis that some of the items described in the plan may be completed at a later date.") (citation omitted); *In re Appeal of McGlynn*, 974 A.2d 525, 536 (Pa.Cmwlth.2009) ("[I]n [*Broussard*], the Court distinguished between an applicant who merely promises to bring a non-compliant zoning plan into compliance

and an applicant who reasonably shows the ability to fulfill requirements. No abuse of discretion will be found in granting conditional approval to the latter. In this case, the Board could properly conclude that Applicant reasonably showed the ability to fulfill the site plan requirements.").[14]

As alleged by Objector in this appeal, the record does not support the Board's determination that Developers can satisfy the open space and stormwater management requirements of the Township's Zoning Ordinance as currently proposed. As a result, the Board erred in granting Developers' conditional use application. *Blancett–Maddock*, 6 A.3d at 602 ("[H]ere, the proposed cell tower was found not to satisfy the terms of the Zoning Code, and there is no support in the record for the Zoning Board's finding that T–Mobile can cure these 'minor' deficiencies by revising its site plan to relocate the cell tower and widen the access road. In short, the Zoning Board erred by using conditions to make T–Mobile's unsatisfactory [special exception] application satisfactory. Accordingly, we must reverse.").[15]

lawsuit to compel legislative action normally would be barred by the speech and debate clause. Litigants may not sue in court to compel the legislature to enact a law.").

14. The instant matter is also distinguishable from *Morris v. South Coventry Township Board of Supervisors*, 836 A.2d 1015, 1019–20 (Pa.Cmwlth.2003), *appeal denied*, 580 Pa. 701, 860 A.2d 126 (2004), wherein we held that the lawns of two privately owned residential lots qualified as restricted open space under the relevant ordinance thereby supporting preliminary plan approval. *See Morris*, 836 A.2d at 1019 ("Morris is confusing 'ownership' with 'use.' There is no restriction in the Zoning Ordinance precluding ownership of open space by private residents...."). Although section 225–7.F.(4)(f) of Ordinance No.2010–01 specifically provides that "[p]roposed open space already owned by the Borough may be retained in the Borough's ownership ...", this provision cannot apply to the use of parcel 40–1–23.1 to meet the Zoning Ordinance's

open space requirements due to the restrictions on its use by the express terms of Act 70.

15. Developers and the Township allege that Objector has waived any allegation of error with respect to Act 70. However, it is undisputed that the Board specifically considered the application of Act 70 in disposing of the conditional use application, specifically imposing the removal of the Act 70 deed restrictions as a condition for development. In addition, Objector has preserved throughout the issue that the Board erred in granting the application because Developers failed to demonstrate compliance with the objective open space and stormwater management provisions of the Township's Zoning Ordinance. Thus, the Board's application of the law, i.e., Act 70, with respect to the issue of whether Developers demonstrated compliance with the open space and stormwater management requirements of the Ordinance, is not the improper injection of a new or novel issue

Accordingly, the trial court's order is reversed.[16]

### ORDER

AND NOW, this 12th day of July, 2012, the June 27, 2011, order of the Court of Common Pleas of Chester County, is reversed.

into this matter, but instead is patently within our scope of review.

16. Based on our disposition of this claim, we will not reach the other allegations of error raised in this appeal.