# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Centi and Amy Centi, his wife,   :
                                :
                  Appellants   :
                                :
           v.                  :   No. 2048 C.D. 2013
                                :
General Municipal Authority of the   :   Argued: June 16, 2014
City of Wilkes-Barre               :


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                       **FILED: July 21, 2014**

David Centi and Amy Centi, his wife, (the Centis) appeal from the Order of the Court of Common Pleas of Luzerne County (trial court) that granted summary judgment in favor of the General Municipal Authority of the City of Wilkes-Barre (the Authority). The trial court held that there was no legally binding contract requiring the Authority to sell approximately 66 acres of property located in Bear Creek Township, Luzerne County, Pennsylvania (Property) to the Centis and that the Centis did not suffer any recoverable damages in this matter. On appeal, the Centis argue that the trial court erred in granting summary judgment based on its conclusions that there was no legally binding contract between the Authority and the Centis and that the Centis did not suffer recoverable damages. Discerning no error, we affirm.

On October 8, 2010 the Authority advertised a bid notice (Notice) indicating that it was accepting sealed bids for the sale of the Property. (Trial Ct. Op. at 1.) The Notice provided that the bid was subject to the terms of a sales agreement to be provided to the buyer after the Authority accepted the bid. (Trial Ct. Op. at 1.) The Centis submitted a sealed bid to purchase the Property for $61,101.00, which the Authority accepted in a letter dated October 27, 2010 (Award Letter), subject to the terms of the Notice and a signed Agreement for the Sale (Sales Agreement). (Trial Ct. Op. at 1; Centis' Bid, R.R. at 112A; Award Letter, R.R. at 23A.) However, after the Award Letter was mailed, the Authority discovered that the Property had been purchased using State funds pursuant to the Project 70 Land Acquisition and Borrowing Act[1] (Act). (Trial Ct. Op. at 1.)

Under the Act, lands acquired with Act funds are to be used for recreational, conservational, or historic purposes unless the General Assembly approves otherwise, and these restrictions are to be included in any deed for such property. Sections 18(c) and 20(c) of the Act, 72 P.S. §§ 3946.18(c), 3946.20(c). This restriction was not recorded on the Property's deed. (Trial Ct. Op. at 6.) Section 20(b) of the Act provides that land acquired with Act funds may not be disposed of

---

[1] Act of June 22, 1964, P.L. 131, as amended, 72 P.S. §§ 3946.1 – 3946.22. The Act implemented Article VIII, Section 15 of the Pennsylvania Constitution and authorized the Commonwealth to issue bonds for up to $70 million to assist the Commonwealth and political subdivisions to acquire land for parks, reservoirs and other conservation, recreation, and historic preservation purposes. Pa. Const. art. VIII, § 15; Sections 2, 4, 17 of the Act, 72 P.S. §§ 3946.2, 3946.4, 3946.17. Pursuant to Section 16(c) of the Act, any funds that remained available for expenditure as of December 31, 1970 and not designated as encumbered "shall be paid into the Project 70 Land Acquisition Sinking Fund, to be devoted to and to be used exclusively for the payment of interest accruing on bonds and the redemption of bonds at maturity." 72 P.S. § 3946.16(c).

without express approval from the General Assembly. 72 P.S. § 3946.20(b). The Authority did not have approval from the General Assembly to sell the Property. (Trial Ct. Op. at 2-3.) Accordingly, the Authority sent a letter to the Centis on November 5, 2010 advising them that it could not transfer title to the Property, would not prepare the Sales Agreement, and would not be selling the Property unless, and until, it received approval from the General Assembly. (Trial Ct. Op. at 2; Letter from the Authority to the Centis (November 5, 2010), R.R. at 24A.)

On October 4, 2011, the Centis filed a Complaint against the Authority asserting that the Authority breached a contract for the sale of the Property. The Centis averred that a legally binding contract to sell the Property to the Centis was formed based upon the Authority's issuance of the Notice inviting bids, the Centis' bid, and the Authority's acceptance of the bid in the Award Letter. (Complaint ¶¶ 3-5, 8, R.R. at 2A-3A.) The Centis sought specific performance or a judgment against the Authority "in an amount equal to the difference in the agreed upon purchase price and the fair market value of the [P]roperty together with damages, costs, interest, attorney's fees and any other relief as may be appropriate." (Trial Ct. Op. at 2; Complaint ¶¶ 11-14, and wherefore clauses, R.R. at 4A.) The Authority filed a Motion for Summary Judgment (Motion), asserting that it was entitled to a judgment as a matter of law because, *inter alia*, there was no binding contract to sell the Property to the Centis because the Authority had not received prior authorization to sell the Property from the General Assembly, and the Centis

3

had not suffered any damages as a result of the alleged breach of contract.[2] (Motion ¶¶ 12-13, 17, R.R. at 244A-45A.)

The trial court granted the Motion, citing Deitrick v. Northumberland County, 846 A.2d 180 (Pa. Cmwlth. 2004), because it found no genuine issue of material fact that: (1) the Authority did not obtain the General Assembly's approval before accepting sealed bids for the sale of the Property; and (2) the Centis incurred no recoverable damages in reliance on the Authority's acceptance of their bid. The trial court held that, pursuant to Deitrick, the Notice advertising the Property for sale was a nullity, *ultra vires* and without effect because the Authority did not have the General Assembly's approval to sell the Property as required by Section 20(b) of the Act and, therefore, there was no contractual relationship between the Authority and the Centis. (Trial Ct. Op. at 3-4.) The Centis now appeal to this Court.[3]

---

[2] The Authority cited David Centi's deposition testimony that the Centis had no out-of-pocket expenses related to their attempted purchase of the Property. (Motion ¶ 22, R.R. at 246A; David Centi's Dep. at 17-18, 20, R.R. at 420A.)

[3] This Court's review of a trial court's order granting summary judgment "is whether the trial court committed an error of law or abused its discretion." Gontarchick v. City of Pottsville, 962 A.2d 703, 705 n.3 (Pa. Cmwlth. 2008). "Summary Judgment may be granted only when the facts demonstrate clearly that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Id. In reviewing a trial court's decision on a motion for summary judgment, this Court views the record "in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." Pennsylvania State University v. County of Centre, 615 A.2d 303, 304 (Pa. 1992). "Summary judgment may be entered only in those cases where the right is clear and free from doubt." Id. This inquiry involves questions of law and, therefore, this Court's review is *de novo*. Payne v. Department of Corrections, 871 A.2d 795, 800 (Pa. 2005).

4

The Centis first argue that the trial court erred in holding, based on Section 20(b) of the Act and Deitrick, that there was not an enforceable written contract for the sale of the Property. According to the Centis, Deitrick is distinguishable because, in that case, no contract was created since the county violated Section 504(b) of The County Code[4] pertaining to the formation of a contract. The Centis assert that the Authority, here, did not establish that it violated any of the formalities of forming a contract, other than not obtaining the General Assembly's consent to sell the Property. The Centis also contend that, even if the Authority violated the Act, only the Commonwealth has the authority to enforce the Act's restrictions and the Authority cannot rely on the Act to claim that there is no enforceable contract here. Finally, the Centis argue that because the offer and acceptance (the Centis' bid and the Award Letter, respectively) are in writing, are signed, and set forth the material terms of the sale, there is nothing in the Statute of Frauds[5] that would prevent the sale of the Property.

The Act declared, *inter alia*, that the "development of public and private lands for recreational purposes should be encouraged" and that "[t]he provision of lands for public recreation and the conservation of natural and historical resources promotes the public health, prosperity and general welfare." 72 P.S. § 3946.2(2), (3). Thus, the Act established a program through which the Commonwealth would financially assist political subdivisions in acquiring lands that were appropriate for

---

[4] Act of August 9, 1955, P.L. 323, as amended, 16 P.S. § 504(b). This section requires that any contract be in writing and signed by at least two county commissioners. Id.

[5] Act of March 21, 1772, 33 P.S. §§ 1-8. Section 1 of the Statute of Frauds requires that agreements for the sale of land be in writing and signed. Id.; Dalkiewcz v. Redevelopment Authority of Luzerne County, 588 A.2d 932, 934 (Pa. Super. 1991).

these purposes. 72 P.S. § 3946.2(5). In accordance with the Act's purpose, the General Assembly placed certain restrictions on the use or alienation of lands acquired using Act funds, including that the deeds of any land acquired using Act funds must include a specific clause indicating that the "indenture is given to provide land for recreation, conservation and historical purposes" as those purposes are defined by the Act. 72 P.S. § 3946.20(c). Section 20(b) of the Act, at issue in this matter, provides, in pertinent part that "[n]o lands acquired with funds made available under this act shall be disposed of or used for purposes other than those prescribed in this act without the express approval of the General Assembly." 72 P.S. § 3946.20(b).[6] This Court addressed the restrictions found in Section 20(b) of the Act and their effect on selling or placing encumbrances on Act-funded property in contravention of that section in Deitrick and Feldman v. Board of Supervisors of East Caln Township, 48 A.3d 543 (Pa. Cmwlth. 2012).

In Deitrick, a county advertised that it was selling three parcels of county-owned real estate, and the appellant was the highest bidder for one of the parcels. Deitrick, 846 A.2d at 181-82. At a public meeting the county commissioners awarded the bid to the appellant and sent a letter confirming the award of the bid, which was signed by the county's assistant chief clerk. Id. at 182. Thereafter, the county learned that the parcel was purchased with Act money, the parcel's use was

---

[6] Section 20(d) and (e) of the Act describes what may happen if the Act's provisions are violated, authorizing the Commonwealth to specifically enforce the restrictions contained in the Act and indicating that if the terms of the Act are "willfully violated" the violating political subdivision has "the duty . . . to reimburse the Commonwealth in the amount of the aid rendered to it . . . in the acquisition of the land in question plus six per cent interest compounded semi-annually from the date of receipt of said aid until the date of said reimbursement." 72 P.S. § 3946.20(d), (e).

restricted pursuant to Section 20(c) of the Act, and this restriction did not appear in the deed.  Id.  The county subsequently sought approval from the General Assembly to sell the parcel, which the General Assembly gave, subject to the inclusion of, *inter alia*, a restriction in the deed that the parcel be used for land conservancy purposes consistent with the Act.  Id.  The General Assembly also prohibited the parcel from being sold at below fair market value.  Id.  The county, again, advertised the parcel for sale, with notice of the General Assembly's restrictions.  Id.  The appellant filed a complaint in equity and sought a preliminary injunction of the sale on the basis that he had a valid, enforceable contract to purchase the parcel based on the first public auction and was entitled to specific performance.  Id. at 182-83.  After initially granting the preliminary injunction, the chancellor ultimately concluded that no contract existed between the county and the appellant because the Act precluded the county from selling the parcel in the first instance when it had not received General Assembly approval; therefore, the chancellor dissolved the preliminary injunction.  Id. at 183-84.  The chancellor further held that there was no enforceable contract because there was no written contract signed by the county commissioners as required by Section 504(b) of The County Code, 16 P.S. § 504(b).  Deitrick, 846 A.2d at 186.

On appeal to this Court, the appellant in Deitrick argued that the chancellor erred in holding that no contractual relationship existed.  Id. at 184-85.  In affirming the chancellor's order we stated:

> [t]he language of . . . [the Act] is clear in this regard: . . . . It is undisputed that the Parcel was originally acquired by the County with . . . Act funds and that the County did not obtain the express approval of the General Assembly prior to the first public auction of the Parcel. The County violated the express language of the . . . Act and, on that

7

basis alone, the Chancellor committed no error of law or abuse of discretion in declaring the first auction a nullity.

Id. at 185-86. This Court further disagreed with the appellant's argument that the penalty provision in Section 20(d) indicated that the Act did not prohibit the selling of restricted land and plainly contemplated that such sales could occur. Id. at 186 n.12. In doing so we stated, "[a]ppellant's argument is unpersuasive. Just because the . . . Act provides penalties for noncompliance does not mean that a chancellor in equity may not stop a sale of [Act] land being conducted in violation of the [A]ct." Id. We also affirmed the chancellor's alternate conclusion that there was no enforceable contract under Section 504(b) of The County Code. Id. at 186.

More recently, in Feldman, a township granted a conditional use application permitting the construction of seventy multi-family dwelling units on parcels of land, some of which had been acquired using Act funds and were used as a public park. Feldman, 48 A.3d at 544-45. A developer had an agreement of sale with the borough to purchase the property, which included the grant of an easement to the developer to use the public park area for open space, storm water management, parking, and other development purposes. Id. at 545. The decision granting the application indicated that, "if required, the [b]orough shall obtain the removal of any Project 70 deed restrictions affecting the proposed development of the Property." Id. at 546-47. An objector to the application appealed to the court of common pleas, which affirmed the approval of the application. Id. at 547. The objector then appealed to this Court, and we reversed. Id. at 547, 552. Citing Section 20(b) of the Act, we noted that there was nothing in the record showing that the General Assembly had granted approval for the borough to encumber the land acquired with Act funds. Id. at 549-50. Thus, this Court held that "the uses to

8

which [the Act-funded parcel] is subject under the Agreement and its amendments are *ultra vires* and without effect in the absence of prior approval by the General Assembly," and that "the removal of the Act . . . deed restrictions is required prior to" the encumbrance of the parcel. Id. at 550 (citing Deitrick, 846 A.2d at 186). Absent the use of the Act-funded land, the developer could not meet its burden of proving an entitlement to a conditional use permit and, therefore, we reversed the order of the court of common pleas. Feldman, 48 A.3d at 551.

The facts in the present matter are very similar to those in Deitrick. In both cases: there was an advertised notice that a municipal entity was accepting bids for the sale of property; the municipal entities' deeds did not reference the Act restrictions; the appellants submitted the winning bids, the municipal entities sent letters awarding the bid to the appellants; the municipal entities learned shortly thereafter that the property being sold was purchased with Act funds; and the municipal entities advised the appellants that they could not sell the property under the original bid because they had not received prior approval from the General Assembly to sell the property. While the Centis are correct that the chancellor and this Court, in Deitrick, did discuss whether there was a valid contract under The County Code, this Court clearly stated that the violation of the express language of Section 20(b) of the Act, *alone,* supported the chancellor's declaration that the unapproved sale of the property was a nullity. Deitrick, 846 A.2d at 186. Moreover, this Court, in Feldman, concluded that any restrictions under the Act must be removed, via approval by the General Assembly, *prior* to the conveyance of the interest in the property. Feldman, 48 A.3d at 550.

9

Accordingly, in both Deitrick and Feldman the municipalities attempted conveyances of an interest in real property acquired with Act funds without the approval of the General Assembly were set aside as being *ultra vires* and without effect. We hold that the same result should occur here where "[t]he [Authority] violated the express language of the . . . Act and, on that basis alone, the [trial court] committed no error of law or abuse of discretion in declaring the . . . [Notice] a nullity," Deitrick, 846 A.2d at 186, and the Notice inviting bids for the sale of the Property was "*ultra vires* and without effect in the absence of prior approval by the General Assembly," Feldman, 48 A.3d at 550.

We are unpersuaded by the Centis' argument that the Authority cannot "enforce" the Act's limitations by cancelling the Award Letter. This argument does not account for the fact that the Notice inviting bids on the Property was *ultra vires* and without effect at the outset. The Centis' argument would prohibit the trial court, and this Court, from "stop[ping] a sale of [Act] land [from] being conducted in violation of the act," a result that this Court did not approve in Deitrick. Deitrick, 846 A.2d at 186 n.12. Finally, because the Notice was *ultra vires* and without effect, any subsequent "contract" that may have been entered into likewise was without effect and it is unnecessary to address the Centis' Statute of Frauds argument.

Finally, the Centis argue that the trial court erred in granting summary judgment based on the trial court's conclusion that they suffered no recoverable damages. According to the Centis, because there was a written contract for the sale of real estate, all remedies, including specific performance, are available.

10

They assert that they have established that they suffered recoverable monetary damages, such as attorney's fees and the loss of the fair market value of the Property that was not conveyed. Since we conclude that the trial court did not err in holding that there was no enforceable contract because the Notice was a nullity, *ultra vires* and without effect at the outset, we do not address the Centis' claims that they suffered recoverable damages in this matter. However, we note that the Centis' admitted that they had no damages related to purchasing the Property[7] and that the appellant in Deitrick also sought specific performance, but this relief was denied because no contractual relationship was formed by the county's acceptance of the appellant's bid based on the initial bid notice in that case being declared a nullity where the county had not obtained General Assembly approval prior to issuing the bid notice. Deitrick, 846 A.2d at 182-83, 185-86.

Accordingly, the trial court's Order is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

---

[7] In their Answer to the Authority's Request for Production of Documents and depositions, the Centis agreed that they had no out-of-pocket costs related to their attempted purchase of the Property. (David Centi Dep. at 18, 20, R.R. at 420A; Amy Centi Dep. at 26, 29, R.R. at 307A-08A; see also The Centis' Answer to the Authority's Request for Production of Documents ¶¶ 6-10, 14-15, R.R. at 41A-42A (stating that the Centis had not, e.g., had a title search conducted on the property, applied for title insurance, applied for a mortgage in connection with the purchase, or had the Property appraised or surveyed); the Centis' Answer to the Authority's Interrogatories at 4-11, R.R. at 65a-72a (stating no title search was performed, the Centis did not apply for a mortgage, the Centis had not had the Property appraised, the Centis had not made any zoning application regarding the Property, and did not have an itemized list of any damages).)

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Centi and Amy Centi, his wife, :
:
Appellants :
:
v. : No. 2048 C.D. 2013
:
General Municipal Authority of the :
City of Wilkes-Barre :

# **O R D E R**

   **NOW**,  July 21, 2014,  the Order of the Court of Common Pleas of Luzerne County entered in the above-captioned matter is hereby **AFFIRMED**.


_____
**RENÉE COHN JUBELIRER, Judge**