## BOROUGH OF DOWNINGTOWN and Council of the Borough of Downingtow

v.

## FRIENDS OF KARDON PARK, Ann M. Feldman, Marion Ungrich, Evelyn Hopkins, Progressive Housing Ventures, LLC, J. Loew & Associates, Inc., Kim Manufacturing Co., Stewart Hall, L.P. and Commonwealth of Pennsylvania, Attorney General.

**Appeal of: The Borough of Downingtown, Progressive Housing Ventures, LLC, and J. Loew & Associates, Inc.**

Commonwealth Court of Pennsylvania.

Argued Feb. 15, 2012.

Decided Aug. 3, 2012.

---

Robert L. Byer, Pittsburgh, for appellants J. Loew & Associates, Inc. and Progressive Housing Ventures, LLC.

Patrick M. McKenna, West Chester, for appellant Borough of Downingtown.

Henry F. McHugh, Media, for appellees Kim Manufacturing Company and Stewart Hall, L.P.

Samuel C. Stretton, West Chester, for appellees Friends of Kardon Park, Marion Ungrich, Evelyn Hopkins and Ann M. Feldman.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge McCULLOUGH.

The Borough of Downingtown (Borough), Progressive Housing Ventures, LLC (Progressive), and J. Loew & Associates, Inc. (Loew) (collectively, Developers) appeal from the October 7, 2010, order of the Court of Common Pleas of Chester County, Orphans' Court Division (trial court) denying the Borough's Petition for Approval of the Sale of Real Property (petition). We vacate and remand.

In July 2006, the Borough issued a Request for Proposal to develop approximately 51.7 acres of land owned by the Borough (Property), of which 27.8 acres are located in East Caln Township (Township) and 23.9 acres are located in the Borough. The successful respondent is a joint venture by Developers, who entered into an agreement with the Borough in 2007, with subsequent amendments, to convey for development approximately 40.5 acres with 305 residential dwelling units, 40 "live over work" rental units, and 20,000 square feet of commercial space.

The land to be developed is composed of the following five parcels. Parcel UPI No. 11–4–23 consists of 7.6 acres partly located in both the Borough and the Township. The Borough acquired this parcel by purchase from Kathryn Meisel in 1962. This parcel is wooded and contains two manmade ponds known as Second and Third Lakes, which are part of the original millrace system that was fed by the Brandywine River. The proposed plan would retain this parcel as parkland.

Parcel UPI No. 11–4–13 consists of 6.8 acres in the Borough and was acquired in 1968 for recreation, conservation, and historical purposes pursuant to Act 70.[1] This

---

1. Act 70 is the Project 70 Land Acquisition and Borrowing Act, Act of June 22, 1964, Special Sess., P.L. 131, *as amended*, 72 P.S. §§ 3946.1–3946.22. Article 8, section 15 of the Pennsylvania Constitution is entitled "Project '70'" and states, in pertinent part:

[T]he Commonwealth may be authorized by law to create debt and to issue bonds in the amount of seventy million dollars ($70,000,-000) ... for participation by the Commonwealth with political subdivisions in the acquisition of land for parks, reservoirs and

parcel was released from the Act 70 deed restrictions by the General Assembly in Act 29 of 1999[2] and would be developed under the proposed plan.

Parcel UPI No. 40–1–23.1 consists of 14.3 acres in the Township and was acquired by purchase from Downingtown Paper Company for $12,000 in 1968 under Act 70 for recreation, conservation and historical purposes. Another man-made pond, known as Fourth Lake, is located on this parcel. In 1984, a paved walking, jogging, and biking trail known as the "Lions Trail" was installed and bisects the southern portion of the parcel. Legislation is pending to release this parcel from the Act 70 deed restrictions. The proposed plan would retain a portion of this parcel as parkland and another portion would be developed.

 Parcel UPI No. 11–4–14.2–E consists of 7.4 acres in the Borough and

other conservation and recreation and historical preservation purposes, subject to such conditions and limitations as the General Assembly may prescribe.
Pa. Const. art. VIII, § 15.
Pursuant to the foregoing constitutional authority, the General Assembly enacted section 2 of Act 70 which authorizes the creation and liquidation of indebtedness of $70,000,000 for the acquisition of lands for recreation, conservation, and historical purposes in counties where public ownership of land for recreation purposes is less than 10% of the total land area or where there is an urban area of more than 25,000 persons. 72 P.S. § 3946.2. Under section 17(d), political subdivisions may acquire land for such purposes "[b]y purchase agreement or by eminent domain proceedings in the manner provided by applicable provisions of law which may govern land acquisitions for such purposes by such political subdivision...." 72 P.S. § 3946.17(d).
In addition, section 20 of Act 70 provides, in pertinent part:
(b) No lands acquired with funds made available under this act shall be disposed of or used for purposes other than those prescribed in this act without the express approval of the General Assembly: Provided, That ... a political subdivision, as owner of such lands, may issue permits, licenses or leases for the exploration, development, storage and removal of oil, gas or other minerals, or for the installation and use of water, gas, electric, telephone, telegraph, oil or oil products lines, under reasonable regulations prescribed by such owner consistent with the primary use of such lands for "recreation, conservation and historical purposes."
(c) The deeds of all lands acquired under the provisions of this act shall contain the following clause:

This indenture is given to provide land for recreation, conservation and historical purposes, as said purposes are defined in [Act 70].
(d) Should the provisions of this act as they are applicable to the political subdivisions of the Commonwealth be willfully violated, it shall be the duty of the governing body of said subdivision or of its successor to reimburse the Commonwealth in the amount of the aid rendered to it by the Commonwealth in the acquisition of the land in question plus six per cent interest compounded semi-annually from the date of receipt of said aid until the date of said reimbursement....
(e) The Commonwealth of Pennsylvania may specifically enforce the provisions of this requirement by application to a court of equity
or may invoke other remedies deemed appropriate under the circumstances.
72 P.S. § 3946.20(b)—(e).

2. Act of June 25, 1999, P.L. 220, No. 29. Section 1 of Act 29 states, in pertinent part:

Under the requirements of section 20(b) of [Act 70], the General Assembly hereby authorizes the release of Project 70 restrictions from the lands described in section 2 in exchange for imposition of Project 70 restrictions on the lands described in section 3 which are owned by the [Borough] and imposition of Project 70 restrictions on the lands described in section 4 which are to be obtained by the [Borough].
In turn, section 2 of Act 29 contains a metes and bounds description of the parcel for which the Project 70 restrictions were released. The parcels described in sections 3 and 4 of Act 29 are not at issue in the instant appeal.

was acquired by condemnation on December 5, 1974, for park and recreation purposes pursuant to section 2702 of the Borough Code.[3] Likewise, UPI No. 11–4–14 consists of 4.3 wooded acres in the Borough and was acquired by condemnation on June 30, 1977, for park and recreation purposes.[4] Both parcels would be developed under the proposed plan.

Beginning in the 1930s, the parcels west of UPI No. 11–4–23 (the first parcel that was purchased from Meisel) were privately owned and used as a quarry. When this use ended, the exposed cavities were filled in with industrial waste by-products and municipal waste. On October 5, 1978, the Borough held a ceremony to "dedicate" as "Kardon Park" the 12 acres of UPI Nos. 11–4–14.2–E and 11–4–14 that had been acquired by condemnation. The Borough intended for Kardon Park to serve as a passive recreational park rather than an active park. The ponds in the park have been historically used for fishing in the warmer months and for ice skating in the winter. In 2004, a public monument known as the Victims of Violence Memorial

was erected, and a public ceremony is held annually to honor victims of crime.

The Borough began planning to develop the Property in the early 1990s and applied to the Pennsylvania Department of Environmental Protection (DEP) for clearance under Act 2[5] to use the Property as a passive park and for commercial development. In 1999, the Borough had Golder Associates conduct site specific analysis for contaminates in the Property's surface soil, subsurface soil, and groundwater. Golder issued a report that identified a layer of "historic fill," composed of iron slag, metal, paper and wood products, and plastics, as thick as 2 to 12 feet that covers nearly the entire property to the west of the existing ponds. The fill area encompasses a volume of greater than 250,000 cubic yards and contains benzo(a)pyrene, arsenic, iron, lead, mercury, and vanadium. Golder prepared a cleanup plan which proposed the continued recreational use of the eastern portion of the Property and commercial uses for the contaminated area. The report found that the risks to both park users and groundkeepers due to direct contact with contaminants in the surface

3. Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. § 47702.

4. Article 1, section 10 of the Pennsylvania Constitution states that "[n]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." Pa. Const. art. I, § 10. Thus, article 1, section 10 gives the Borough the authority to condemn private property for public use. *In re Condemnation of Lands of Laughlin*, 814 A.2d 872, 876 (Pa.Cmwlth.), *appeal denied*, 573 Pa. 700, 825 A.2d 1263 (2003). To be valid, the Borough's condemnation must be in accordance with the law and intended to advance a public purpose. *Id.* Section 2702 of the Borough Code confers the authority to condemn on the Borough stating, in pertinent part, "[a]ny borough may enter upon, appropriate and acquire by gift, devise, purchase, lease, or otherwise, private property within

the limits of the borough, or in any adjacent township. . . ." 53 P.S. § 47702. In addition, a public park use is a valid public purpose for the condemnation of a landowner's property. *In re Condemnation of Lands of Laughlin*, 814 A.2d at 876. *See also* section 2703 of the Borough Code, 53 P.S. § 47703 ("The appropriation of private property for the purpose of making, enlarging and maintaining recreation places, is declared to be the taking of private property for public use, and for all damage suffered by the owners of any property so taken, the funds of the borough raised by taxation shall be pledged as security."). Thus, the Borough's condemnation of these parcels for such a public use was proper.

5. Act 2 is the Land Recycling and Environmental Remediation Standards Act, Act of May 19, 1995, P.L. 4, 35 P.S. §§ 6026.101–6026.908.

soil were within limits established by DEP. Golder conducted surveys establishing that 77% of the recreational use of the Property is for walking, running, jogging, biking, skating, and skateboarding on the trails, and that the recreational use was predominantly by adults for about ten minutes or less.

In 2008, in conjunction with the proposed plan, Advanced GeoServices performed a review of the original risk assessment. In its report, Advanced GeoServices found that exposure to the collective concentrations of arsenic, iron, and mercury on the Property posed an unacceptable risk to park users. On August 6, 2008, DEP approved Advanced GeoServices' new cleanup plan that was integral to the proposed development. The cleanup plan involved installing a "cap" over the contaminated areas of the Property to be developed for residences.

The Borough has amended its zoning ordinance and approved a conditional use application for the proposed development of the Property. Under the agreement, the Borough will receive a percentage of the sale of each dwelling unit and will receive funds to provide for another public use, most likely the construction of a new firehouse.

Friends of Kardon Park (Friends), Kim Manufacturing (Kim), Stewart Hall, L.P. (Stewart Hall), Ann M. Feldman, Marion Ungrich, Evelyn Hopkins, and Rosetta Tootle (Residents) (collectively, Objectors) oppose the sale.[6] On January 30, 2009, Friends and Residents filed an equity action against the Borough and Developers seeking declaratory and injunctive relief prohibiting the Borough from selling the Property for development. Likewise, on February 6, 2009, Kim and Stewart Hall filed an equity action seeking the same relief.

■ On March 27, 2009, the Borough filed the instant petition with the trial court seeking approval to sell the Property under the agreement. In the petition, the Borough alleged that the trial court had jurisdiction under the Inalienable Property Act,[7] the Dedicated or Donated Property Act (DDPA),[8] or the common law public trust doctrine[9] and sought approval of the sale under the Inalienable Property Act or the DDPA; in the alternative, the Borough requested a finding that court approval was not required because the DDPA does not apply to the sale of purchased or condemned property. By order filed June 9, 2009, the trial court consolidated the equity actions filed by Objectors in the Civil Division with the instant action on the petition filed by the Borough in the Orphans' Court Division.

At trial on the petition, the Borough argued that pursuant to section 6 of the

---

6. Friends is a non-profit corporation. Kim operates a metal fabrication business on real property adjacent to the property and Stewart Hall is the owner of the real property upon which Kim conducts its business. Feldman, Ungrich, Hopkins, and Tootle are residents of the Borough and live in close proximity to the property.

7. 20 Pa.C.S. §§ 8301–8306.

8. Act of December 15, 1959, P.L. 772, 53 P.S. §§ 3381–3386.

9. As this Court explained, "[u]nder the common law public trust doctrine, when land has been dedicated and accepted for public use, a political subdivision is estopped from interfering with or revoking the grant at least so long as the land continues to be used, in good faith, for the purpose for which it was originally dedicated." *In re Estate of Ryerss*, 987 A.2d 1231, 1237 n. 8 (Pa.Cmwlth.2009) (citation omitted).

DDPA,[10] the DDPA does not apply to this matter because the parcels comprising the Property were acquired by purchase or condemnation. The Borough also argued that even if the DDPA does apply, section 4 of the DDPA [11] permits a municipality to request permission of the trial court to sell property held in trust when the municipality determines that the original use is no longer practicable or possible or has ceased to serve the public interest.[12] Friends and Kim argued that the common law public trust doctrine was applicable, not the DDPA, and, further, that the Bor-

ough did not meet its burden under the statute to convey the Property.

However, the trial court determined that the DDPA applies in this case, and not the public trust doctrine, based on our Supreme Court's decision in *In re Erie Golf Course*, 605 Pa. 484, 992 A.2d 75 (2010). (Trial court op. at 12) The trial court pointed out that in *In re Erie Golf Course*, the Supreme Court found that the DDPA incorporates the "salient common-law principles" of the public trust doctrine and held that, "[t]o the extent the [DDPA] modifies

10. Section 6 is entitled "Purchased or condemned property" and states:

> Nothing in this act shall be construed to limit or affect the control by a political subdivision of public lands or buildings acquired by such political subdivision by purchase or condemnation.

53 P.S. § 3386.

11. 53 P.S. § 3384. Section 4 is entitled "Orphans' court relief" and states, in relevant part:

> When, in the opinion of the political subdivision which is the trustee, the continuation of the original use of the particular property held in trust as a public facility is no longer practicable or possible and has ceased to serve the public interest, ... the trustee may apply to the orphans' court of the county in which it is located for appropriate relief. The court may permit the trustee to—
>
> \* \* \*
>
> (3) In the event the original trust purpose is no longer practicable or possible or in the public interest, apply the property or the proceeds therefrom in the case of a sale to a different public purpose.

53 P.S. § 3384(3).

12. In arguing that no court order was required to sell the Property, the Borough referenced the acquisition of portions of the Property by condemnation and the application of section 6 of the DDPA. In addition, the Borough and Developers specifically argued in their pre-trial memorandum that section 310(a) of the Eminent Domain Code (Code), 26 Pa.C.S. § 310(a), applies in this case, and they incorporated that argument by reference

in their post-trial memorandum. Section 310(a) of the Code, states:

> (a) **Disposition of property.**—If a condemnor has condemned a fee and then abandons the purpose for which the property has been condemned, the condemnor may dispose of it by sale, lease, gift, devise or other transfer with the following restrictions:
>
> (1) If the property is undeveloped or has not been substantially improved, it may not be disposed of within ten years after condemnation without first being offered to the condemnee at the same price paid to the condemnee by the condemnor.
>
> (2) If the property is located outside the corporate boundaries of a county of the first or second class and is undeveloped or has not been substantially improved and was devoted to agricultural use at the time of the condemnation, it may not be disposed of within 21 years after condemnation without first being offered to the condemnee at the same price paid to the condemnee by the condemnor.
>
> (3) If the property is undeveloped or has not been substantially improved and the offers required to be made under paragraphs (1) and (2) have not been accepted, the property shall not be disposed of by any condemnor, acquiring agency or subsequent purchaser for a nonpublic use or purpose within 21 years after condemnation. Upon petition by the condemnor, the court may permit disposal of the property in less than 21 years upon proof by a preponderance of the evidence that a change in circumstances has abrogated the original public purpose for which the property was taken.

the public trust doctrine, the prior common-law principles are superseded." (*Id.* quoting *In re Erie Golf Course*, 605 Pa. at 503–04 n. 16, 992 A.2d at 86 n. 16). The trial court also recognized that under *In re Erie Golf Course*, 605 Pa. at 504–06, 992 A.2d at 86–88, the essential discretion lay with the trial court, not the municipality, to determine whether the requirements to sell dedicated or donated property have been met under the DDPA; therefore, appellate court deference is due to the trial court. (Trial court op. at 12–13.) Accordingly, the trial court framed the issues as: (1) whether the Property was. dedicated, formally or informally; and (2) whether the original use of the Property is no longer practicable or possible. or has ceased to serve the public interest. (*Id.* at 13.) The trial court determined that, if it concluded that the Borough did not meet its burden under the DDPA, it then had to determine whether. the Borough could obtain relief under the Inalienable Property Act. (*Id.*)

With respect to the DDPA, the trial court found that substantial evidence supported a finding that the ponds, the paved trails, and the area surrounding the Victims Memorial were all dedicated to and accepted by the public for its use and, given the fact that the public has been given access to the entire Property, the less-visited contaminated areas have also been dedicated to public use. (Trial court op. at 16.) The trial court also concluded that the Borough did not meet its burden of showing that the parkland use of the Property is no longer practicable or possible due to the past contamination of the site. (*Id.* at 16–22.) Instead, the trial court determined that: (1) there was no significant evidence that it was impossible for the public to use any portion of the Property throughout the years; (2) regardless of the levels of contamination, the paved trails and the area around the Victims Memorial continued to serve the public interest; and (3) the area west of the Lion's Trail was also used by the public for biking and other activities. (*Id.*) The trial court specifically rejected the Borough's assertion that it is necessary to sell the Property because the Borough does not have the funds to clean up the contamination. (*Id.* at 21.) As a result, the trial court held that the Borough did not have the authority under the DDPA to sell the property for private development, citing *In re Erie Golf Course* and *In re Estate of Ryerss*. (*Id.* at 21–22.) [13] Accordingly, the trial court denied the Borough's petition and the Borough and Developers filed this appeal.[14]

13. The trial court did not address the issue of whether a court order was not required to sell the Property under section 310(a) of the Code, 26 Pa.C.S. § 310(a). The trial court also held that the Borough did not meet its burden of justifying the sale of the Property under the Inalienable Property Act. (Trial court op. at 22–24.) The trial court's determination regarding the Inalienable Property Act is not at issue in this appeal.

14. On April 26, 2012, Kim and Stewart Hall filed an· application to dismiss ,the instant appeal as moot because Developers executed a new agreement of sale with the Borough on December 28, 2011, thereby replacing the August 17, 2007, agreement of sale underlying the instant proceedings. However, the central issue in this case is whether the Borough has the authority to sell the Property under the DDPA, Act 70, and the Code. That same issue impacts the prior agreement, the present agreement, or any future agreements that the Borough might execute which purports to sell the Property. In addition, the instant matter was not only initiated by the Borough's petition seeking approval of the prior agreement; rather, this case also disposes of the equity actions filed by Objectors that were consolidated by the trial court's June 9, 2009, order. Moreover, the disposition of this appeal may impact the disposition of a pending related appeal in *Feldman v. Board of Supervisors of East Caln Township, et al.*, 48 A.3d 543

On appeal from an order of an orphans' court, this Court's scope of review is limited to determining whether the record is free from legal error and whether the orphans' court's factual findings are supported by the evidence. *In re Estate of Ryerss*, 987 A.2d at 1237 n. 12. Thus, our scope of review is quite narrow. *In re Estate of Schram*, 696 A.2d 1206, 1211 (Pa.Cmwlth.), *appeal denied*, 550 Pa. 712, 705 A.2d 1313 (1997). As the trier of fact, the trial court resolves conflicts in the evidence presented and its findings, if supported by competent record evidence, are entitled to the weight of a jury's verdict. *Id.*

In the present appeal, the Borough and Developers claim that the trial court erred in determining that, pursuant to the DDPA, the Borough did not have authority to sell the Property for private development. More specifically, they contend that the Borough is free to sell the parcels obtained by condemnation under section 301(a) of the Code [15] because they have been used for the purpose for which those parcels were condemned, i.e., as parkland, for the requisite period under the Code and that neither the DDPA nor the public trust doctrine restricts the Borough's power to dispose of the Property. With respect to the remaining parcels obtained by purchase, the Borough and Developers allege that the trial court erred in failing to find that the Property may be sold pursuant to section 4(3) of the DDPA because its continued use as parkland is impracticable and does not serve the public interest due to its contamination. Because the Borough obtained the parcels comprising the Property through various means at different points in time, we will consider the

(Pa.Cmwlth.2012). Accordingly, the application to dismiss this appeal as moot is denied. *Shiomos v. State Employees' Retirement Board*, 533 Pa. 588 n. 1, 626 A.2d 158 n. 1 (1993) ("Appellant Shiomos died ... while this appeal was pending. That fact does not render the case moot as the outcome may have relevance to his estate and also, the questions raised in this appeal have an impact on recurring issues statewide."); *Sierra Club v. Pennsylvania Public Utility Commission*, 702 A.2d 1131 (Pa.Cmwlth.1997), *aff'd*, 557 Pa. 11, 731 A.2d 133 (1999) ("The present case is technically moot because the petitioners have not intervened in the appeal from the PUC's decision in the underlying rate case.... Nevertheless, the court regards the issue presented here as one likely to be repeated yet evade review, and also as one involving an important public interest. Therefore, we deny the PUC's motion to quash."); *Moore v. Reed*, 126 Pa.Cmwlth. 283, 559 A.2d 602, 603 (1989), *appeal denied*, 527 Pa. 657, 593 A.2d 428 (1991) ("[S]ince the central issue relating to who has the authority to contract has not been affected by the Amended Agreement, it continues to be a subject of dispute between the parties. Since the issue will continue to be the subject of dispute in future negotiations, and is capable of repetition yet evading review, we deny the Mayor's motion to dismiss for mootness.").

15. As noted above, the trial court did not address the application of section 310(a) of the Code in disposing of the petition. Objectors contend that any claims with respect to section 310(a) have been waived. However, as outlined above, the certified record of this case shows that the petition references the acquisition of portions of the Property by condemnation and the application of section 6 of the DDPA. In addition, the Borough's and Developers' pre-trial memorandum specifically argued that section 310(a) applies in this case, and that argument was incorporated by reference in their post-trial memorandum. Accordingly, this issue has not been waived. *In re Estate of Ryerss*, 987 A.2d at 1238 n. 13 ("[A]ppellants contend that they initially preserved the issue of the applicability of the DDPA by indicating in the Petition that they were seeking relief under the Inalienable Property Act or 'any other applicable law.' Appellants further contend that they specifically sought relief under the DDPA in their joint post-hearing briefs. We agree that Appellants adequately raised this issue below and preserved it for our review.") (citation to record omitted).

Borough's and Developers' claims with respect to each of the parcels seriatim.

## Parcels UPI 11–4–13 and 40–1–23.1

■ The trial court made the following specific findings with respect to parcels UPI 11–4–13 and UPI 40–1–23.1 in disposing of the Borough's petition. Both of these parcels were acquired in 1968 with Act 70 funds for recreation, conservation, and historical purposes. (Trial court op. at 4, 22.) The General Assembly released parcel UPI 11–4–13 from the Act 70 deed restrictions by Act 29 of 1999, and it would be developed under the proposed plan. (*Id.* at 4) Legislation is pending to release parcel UPI 40–1–23.1 from the Act 70 deed restrictions. (*Id.*) A portion of this parcel would remain as parkland and another portion would be developed under the proposed plan. (*Id.*)

However, the trial court failed to consider the application of Act 70 in disposing of the Borough's petition under the DDPA. As noted above, section 20(b) of Act 70 provides, in pertinent part, that "[n]o lands acquired with funds made available under this act shall be disposed of or used for purposes other than those prescribed in this act without the express approval of the General Assembly. . . ." 72 P.S. § 3946.20(b). Thus, the public trust doctrine does not preclude the sale of parcel UPI 11–4–13 to Developers because, although this parcel was purchased with Act 70 funds, the General Assembly's subsequent enactment of Act 29 of 1999 permitted its conveyance. As this Court explained in *Pilchesky v. Rendell,* 932 A.2d 287, 290–91 (Pa.Cmwlth.2007):

> [T]he respondents are correct that the common law public trust doctrine does not apply in light of the legislative enactments concerning the Complex. The General Assembly acted pursuant to its authority under Art. VIII, Section 15 of the Pennsylvania Constitution in enacting [Act 70], and it approved the acquisition of the property under that Act. Because the General Assembly acted in the first instance under its constitutional authority (in adopting [Act 70] ), and in the second instance acted pursuant to its authority under the Act (approving the transfer of the property), we conclude that the second amended petition fails to state a claim against the Senate.

Because the DDPA incorporates the "salient common-law principles" of the public trust doctrine, *In re Erie Golf Course,* 605 Pa. at 503–04, 992 A.2d at 86, the DDPA likewise may not prohibit the sale of this parcel because the General Assembly, through Act 29 of 1999, specifically authorized its conveyance to Developers.[16]

■ With respect to the conveyance of parcel 40–1–23.1, section 20(e) of Act 70 states that "[t]he Commonwealth of Pennsylvania may specifically enforce the provisions of this requirement by application to a court of equity or may invoke other remedies deemed appropriate under the circumstances." 72 P.S. § 3946.20(e). Thus, this Court has repeatedly held that only the Commonwealth, and not private citizens, can initiate proceedings to enforce the restrictions relating to the use of par-

---

**16.** In this regard, section 6 of the DDPA states "[n]othing in this act shall be construed to limit or affect the control by a political subdivision of public lands . . . acquired by such political subdivision by purchase. . . ." 53 P.S. § 3386. The Supreme Court held "it most reasonable to construe Section 6 as redressing a concern for the preservation of such rights and interests as a political subdivision may have acquired in connection with a purchase." *In re Erie Golf Course,* 605 Pa. at 506, 992 A.2d at 88. Thus, the rights conferred by the General Assembly to the Borough under Act 70 and Act 29 may well be the dispositive factors with respect to these parcels.

cels purchased with Act 70 funds for recreation, conservation, and historical purposes. *See White v. Township of Upper St. Clair,* 799 A.2d 188, 199 (Pa.Cmwlth. 2002); *Humphreys v. Cain,* 83 Pa.Cmwlth. 176, 477 A.2d 32, 35 (1984); *Quirk v. Schuylkill County Municipal Authority,* 54 Pa.Cmwlth. 619, 422 A.2d 904, 905 (1980). Moreover, at a minimum, the provisions of Act 70 and the DDPA must be considered together in determining whether either of these parcels can be conveyed by the Borough under the agreement. *Avery v. Commonwealth,* 2 Pa.Cmwlth. 105, 276 A.2d 843, 844 (1971).[17]

■ Because the trial court did not consider the application of Act 70 to the instant proceedings, we will vacate its order with respect to the sale of parcels UPI 11–4–13 and UPI 40–1–23.1 under the agreement, and remand for the trial court to consider the provisions of Act 70 in disposing of the parties' claims with respect to these parcels. As we explained in *Gubernick v. City of Philadelphia,* 85 Pa. Cmwlth. 397, 481 A.2d 1255, 1257 (1984):

> [O]rdinarily, questions not properly raised below will not be considered by this Court on appeal. However, when an issue which the Court sees as para-

mount is not addressed by the parties, it will not decide the case sua sponte but will allow the parties an opportunity to address that issue. We therefore remand this case to the common pleas court for determination of which law controls and disposition of the [plaintiffs'] position in accordance with that law . . . ." (citations omitted).

*See also* section 706 of the Judicial Code, 42 Pa.C.S. § 706 ("An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and . . . require such further proceedings to be had as may be just under the circumstances.").

### Parcels UPI 11–4–14.2 E and 11–41–14

■ The trial court also made the following specific findings with respect to parcels UPI 11–4–14.2 E and 11–41–14. The Borough acquired both of these parcels in the 1970s by condemnation for park and recreation purposes. (Trial court op. at 4–5.) Both of these parcels would be developed under the proposed plan. *(Id.)* [18]

As noted above, section 310(a) of the Code provides that "[i]f a condemnor has

---

**17.** In *Avery* we stated:

> Appellants argue that negotiation is required in that the 'manner provided by applicable provisions of law' [in section 17 of Act 70] refers in part to [Section 1 of the Act of May 20, 1921, P.L. 984, *as amended,* 26 P.S. § 261 (repealed) ] and thus limits the right to condemn under [Act 70]. We do not agree. Neither do we agree with the court below that [Act 70] impliedly repealed the negotiation requirement of Section 261. Upon careful analysis we conclude that these sections can and must be read in consistence with each other.

> It is a fundamental tenet of statutory construction that "[s]tatutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things," and "[s]tatutes in pari

materia shall be construed together, if possible, as one statute." Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932.

**18.** Section 17(d) of Act 70 provides that political subdivisions may acquire land "[b]y purchase agreement or by eminent domain proceedings in the manner provided by applicable provisions of law which may govern land acquisitions for such purposes by such political subdivision. . . ." 72 P.S. § 3946.17(d). However, there is no indication in the certified record that parcels UPI 11–4–14.2 E and 11–41–14 were acquired by condemnation with Act 70 funds. Accordingly, the provisions of Act 70 will not be considered in disposing of the claims relating to these parcels.

condemned a fee and then abandons the purpose for which the property has been condemned, the condemnor may dispose of it by sale, lease, gift, devise or other transfer" so long as it has been held for at least 10 years and is undeveloped or has not been substantially improved, or for at least 21 years and is undeveloped or has not been substantially improved and has been used for agricultural purposes. 26 Pa.C.S. § 310(a). In addition, in order for an abandonment to occur, there must be an intent to abandon the condemned property coupled with external acts to achieve that end; mere non-use or lapse of time is not an abandonment. *Miller v. Department of Transportation*, 91 Pa.Cmwlth. 622, 498 A.2d 1370, 1374 (1985); *In re Appeal of Moyer*, 79 Pa.Cmwlth. 56, 468 A.2d 536, 537 (1983). Moreover, the question of whether property has been abandoned is generally for the trier of facts. *See, e.g., Lawson v. Simonsen*, 490 Pa. 509, 518, 417 A.2d 155, 160 (1980) ("Accordingly, we hold that while the Penn Central abandoned the easement, it has not been shown that it also abandoned the track, equipment, and other personalty placed upon the easement. The question of whether property has been abandoned is generally for the jury to decide.") (citation omitted).

The trial court did not make any factual findings regarding how long the Borough held the parcels following their condemnation or the Borough's purported abandonment of the parkland use for the parcels, nor did the trial court consider the application of section 310(a) of the Code or whether the DDPA would still apply in light of section 310(a)'s provisions permitting the sale of previously condemned property that is held for the prescribed period of time.[19] Thus, we will also vacate the trial court's order with respect to the sale of parcels UPI 11–4–14.2 and UPI 11–41–14 under the agreement, and remand for the trial court to make necessary findings and to consider the provisions of section 310(a) in disposing of the parties' claims with respect to the sale of these parcels. *Gubernick*; section 706 of the Judicial Code, 42 Pa.C.S. § 706.

### Parcel UPI No. 11–4–23

 The Borough acquired this 7.6-acre parcel by purchase from Kathryn Meisel in 1962. The parcel is wooded and contains Second and Third Lakes. Under the development plan, this parcel would not be developed but would be dedicated as parkland. (R.R. at 0376a, 0378a, 0383a.)[20] In addition, this parcel would

**19.** Section 6 of the DDPA states "[n]othing in this act shall be construed to limit or affect the control by a political subdivision of public lands ... acquired by such political subdivision by ... condemnation...." 53 P.S. § 3386. As noted above, in *In re Erie Golf Course*, the Supreme Court held "it most reasonable to construe Section 6 as redressing a concern for the preservation of such rights and interests as a political subdivision may have acquired in connection with a purchase." *Id.*, 605 Pa. at 506, 992 A.2d at 88. Thus, the trial court could likewise deem section 6 to preserve the rights conferred by the General Assembly to the Borough under section 310(a) of the Code to dispose of these parcels with unfettered discretion, which could be the dispositive factor with respect to their sale under the agreement. Moreover, at

a minimum, the provisions of section 310(a) of the Code and the DDPA must be considered together in determining whether these parcels can be conveyed by the Borough under the agreement. Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932; *Avery*.

**20.** Although there were no use restrictions or limitations at the time of conveyance, the Borough conceded in the instant petition that it has maintained this parcel as part of a passive park since its acquisition 50 years ago and that it will remain available for recreational use. (R.R. at 0216a.) In addition, the trial court specifically found as fact that "[t]he ponds were used historically for ice-skating in the winter when they froze over,

not be sold to Developers under the agreement. Rather, under the agreement, the Borough would grant Developers "[s]uch free, uninterrupted perpetual and/or temporary (as applicable) easements over, under and through" this parcel as required to: (1) construct improvements or perform work on the parkland as required by any approved conditional use or subdivision or land development plans, or other governmental approvals; (2) construct or extend utilities to serving the development on the adjacent parcels; (3) discharge storm water from the adjacent developed parcels into the ponds; and (4) maintain improvements necessary for the maintenance of common amenities on the neighboring developed parcels. (*Id.* at 1552a.) Because the easements that the Borough conveyed are ancillary to the uses on the other parcels, we will also vacate the trial court's order with respect to the easement for parcel UPI 11–4–23 under the agreement, and remand for the trial court to consider the easement in light of its disposition of the parties' claims regarding the sale of the other parcels and to determine whether the construction, maintenance and utility easements as well as permission to discharge storm water into the two lakes are inconsistent with the use of the parcel as parkland.[21] *Gubernick;* section 706 of the Judicial Code, 42 Pa.C.S. § 706.

Accordingly, the trial court's order is vacated and remanded and Stewart Hall's and Kim's motion to dismiss this appeal is denied.

### ORDER

AND NOW, this 3rd day of August, 2012, the October 7, 2010, order of the Court of Common Pleas of Chester County, Orphans' Court Division, is vacated and the matter is remanded for proceedings consistent with the foregoing opinion. Stewart Hall, L.P.'s and Kim Manufacturing Company's Motion to Dismiss Appeal for Mootness is denied.

Jurisdiction is relinquished.

and fishing in the warmer months." (Trial court op. at 5.)

As the Supreme Court has explained, "[a]s contrasted with recorded restrictive covenants, no particular formalities are necessary to accomplish dedication; all that is necessary are clear expressions of intention." *In re Erie Golf Course,* 605 Pa. at 507 n. 20, 992 A.2d at 89 n. 20 (citation omitted). Thus, this Court has noted:

> Real property may be dedicated to public use in a variety of ways. Dedication may be express or it may be implied from the acts of the parties, and it need not take a particular form. Dedication may be found in a single act, such as the giving of a deed or the recording of a plan, or it may be found from a series of acts, all consistent with and pointing to the intention to dedicate. Dedication, like a contract, requires both offer and acceptance, and once there is acceptance, in whatever form it takes, dedication is irrevocable.

*White,* 799 A.2d at 193 (footnote and citation omitted).

21. We note that, because it is conceded that this parcel can continue to be used as parkland, the Borough and Developers cannot rely upon section 4(3) of the DDPA to support the grant of the instant easements on the basis that "[t]he continuation of the original use of the particular property held in trust as a public facility is no longer practicable or possible and has ceased to serve the public interest...." 53 P.S. § 3354(3).