# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Blythedale Park | : | |
| | : | No. 332 C.D. 2020 |
| Appeal of: | : | Argued: October 8, 2024 |
| Protect Elizabeth Township | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                          **FILED:  June 5, 2025**

Protect Elizabeth Township (Appellant) appeals an order of the Court of Common Pleas of Allegheny County, Orphans' Court Division (orphans' court), entered December 23, 2019, which granted a petition filed by Elizabeth Township (Township) for approval of an easement and right-of-way agreement pursuant to the Pennsylvania Donated or Dedicated Property Act (DDPA).[1]  The agreement allowed Olympus Energy LLC (Olympus)[2] temporary use of a 0.037-acre portion of Blythedale Park to house a water pumping station and underground water line.  Upon review, we reverse.

---

[1] Act of December 15, 1959, P.L. 1772, *as amended*, 53 P.S. §§ 3381-3386.
[2] Olympus was formerly known as Huntley & Huntley Energy Exploration LLC.

# I. BACKGROUND[3]

Blythedale Park is a 20-acre park on the bank of the Youghiogheny River in Elizabeth Township, Allegheny County. The park is a wooded area with a single picnic pavilion and a playground. The park was created by two conveyances made to the Township in 1975 and 1986. The land was donated to the Township for park and recreation purposes.[4] The area of Blythedale Park relevant to this appeal is a small, 0.037-acre portion (Subject Property). The Subject Property is in a floodplain and entirely covered with woods and underbrush.

On March 4, 2019, the Township and Olympus entered into an easement and right-of-way agreement. The agreement allowed Olympus temporary use of the Subject Property to house a 20-feet-by-32-feet water pumping station and an underground water line to provide fresh water to Olympus's gas wells in the Township. In exchange, Olympus provided the Township with a larger piece of usable land (Replacement Land) and a $1,000/month lease for 15 years. The Subject Property was appraised at a value of $3,880, and the Replacement Land was appraised for $4,500.

On June 24, 2019, the Township petitioned the orphans' court for approval of the agreement. Both Appellant and Olympus intervened in the matter. Appellant opposed the petition. On December 23, 2019, following a hearing, the orphans' court granted the petition. Appellant requested reconsideration, which was denied. Appellant timely appealed, and the orphans' court issued a brief 1925(a)

---

[3] Generally, these facts are not in dispute. We derive this background from the orphans' court opinion. *See* Orphans' Ct. Op., 3/4/20.

[4] The 1986 deed specifically provides that the land "was acquired for public recreation use[.]" Although the 1975 deed does not state a specific purpose, Olympus does not dispute that its original intended purpose was also for park and recreation purposes. *See* Olympus Br. at 3 n.1.

statement explaining its reasoning and addressing the issues Appellant raises on appeal.

In support of its decision, the orphans' court reasoned that the Subject Property is no longer practical for use as a park. Orphans' Ct. Op., 3/4/20, at 3 (crediting testimony from Township witnesses). Specifically, according to the orphans' court, the Subject Property "is in a floodplain that is entirely covered with woods and underbrush" and was never used for its intended recreational and park purpose. *Id.* Additionally, the orphans' court credited testimony that the Subject Property was the only suitable land in Elizabeth Township for the pump station. *Id.* Finally, according to the orphans' court, the land and funds received in exchange for the Subject Property served the public interest. *Id.* at 3-4.

Appellant timely appealed to the Superior Court, which transferred the matter to this Court. "Due to a combination of factors, most notably the COVID-19 pandemic, and despite several calls from counsel for Appellant, the matter sat dormant before this Court." Mem. & Order, 12/19/23, at 2 (*per curiam*). Olympus filed an application to dismiss the appeal, which this Court denied. *Id.* at 5. Thereafter, oral argument was held. The matter is now ripe for our consideration.

## II. ISSUES

Appellant presents two issues for our review. First, Appellant asserts that the record does not support a finding that it is no longer practicable or possible to use the Subject Property for its original intended park and recreational purpose. *See* Appellant's Br. at 18-24. Second, Appellant asserts that any land the Township received in exchange for the easement must be free of colorable claims of adverse possession. *See id.* at 24-26. Moreover, Appellant argues that the Township likely

3

already owned the Replacement Land through adverse possession and thus it could not be exchanged by Olympus. *See id.* at 12-13.

Olympus responds that there is substantial evidence to support the court's findings and that Appellant waived its argument that any land exchanged under the DDPA must be free of colorable claims of adverse possession. *See* Olympus Br. at 9-21.[5] Alternatively, Olympus asserts that Appellant is incorrect as a matter of law that any land exchanged must be free from colorable claims of adverse possession. *See id.* at 22-23.

### III. DISCUSSION[6]

The DDPA provides that land "donated to a political subdivision for use as a public facility or dedicated to the public use or offered for dedication to such use . . . is deemed to be held by the political subdivision as a trustee for the benefit of the public with full legal title in the political subdivision as trustee." Section 2 of the DDPA, 53 P.S. § 3382. These donated or dedicated lands "shall be used for the purpose or purposes for which they were originally dedicated or donated, except insofar as modified by court order pursuant to this act." Section 3 of the DDPA, 53 P.S. § 3383.

Section 4 of the DDPA "provides a mechanism" by which a political subdivision may seek to terminate a dedicated use. *In re Est. of Ryerss*, 987 A.2d 1231, 1240 (Pa. Cmwlth. 2009) (*en banc*) (citing 53 P.S. § 3384). The political subdivision may dispose of the land if "the continuation of the original use of the

---

[5] The Township joined Olympus's brief. *See* Joinder Br.

[6] We review an order of the orphans' court to determine whether the record is free from legal error and whether the court's factual findings are supported by the evidence. *In re Est. of Ryerss*, 987 A.2d 1231, 1237 n.12 (Pa. Cmwlth. 2009) (*en banc*). As the trier of fact, the orphans' court resolves conflicts in the evidence presented and its findings, if supported by competent record evidence, are entitled to the weight of a jury's verdict. *Borough of Downingtown v. Friends of Kardon Park*, 55 A.3d 163, 172 (Pa. Cmwlth. 2012) (*en banc*).

4

particular property . . . is no longer practicable or possible and has ceased to serve the public interest[.]"[7] *In re Twp. of Jackson*, 280 A.3d 1074, 1085 (Pa. Cmwlth. 2022) (quoting 53 P.S. § 3384).

"While the term 'practicable' is not defined in the DDPA, this Court has previously relied on that term's common usage, explaining that the word 'practicable' is defined in Webster's Third New International Dictionary 1789 (2002) as '1: possible to practice or perform: capable of being put into practice, done or accomplished: FEASIBLE....'" *In re Est. of Ryerss*, 987 A.2d at 1241 (cleaned up). Further, "practicable" includes both physical feasibility and financial feasibility. *See id.*

The original intended use of Blythedale Park, including the Subject Property, was park and recreational use. Implicitly, the dispute between the parties comes down to what use of land constitutes park and recreational uses.

Appellant argues for a broad definition. Appellant asserts that even though the Subject Property is in a floodplain and covered by trees and underbrush, it can still be used for park and recreational purposes in its current natural state. *See* Appellant's Reply Br. at 3-7. According to Appellant, unused portions of land with trees and overgrowth contribute to a park's aesthetic and recreational qualities. *See*

---

[7] Importantly, the DDPA "does not vest controlling discretion in the political subdivision" but rather specifies under what circumstances a change in purpose may occur upon application to the orphans' court. *In re Erie Golf Course*, 992 A.2d 75, 87 (Pa. 2010). The orphans' court has discretion in granting such an application and crafting an appropriate remedy. *Id.*; *see also id.* (noting that the DDPA "shares considerable similarities with the *cy pres* doctrine applicable to charitable trusts[]" such as "a trustee ha[ving] no discretion to divert from purposes specified by a settlor; rather, the trustee may only lodge an application in a court of equitable jurisdiction, which then exercises its sound discretion in assessing the availability and nature of relief." (footnote and citations omitted)). The DDPA offers several options when there is proof of changed circumstances. *See* Section 4 of the DDPA, 53 P.S. § 3384. Here, because we conclude that it remains practicable to maintain the Subject Property for park and recreational use, we do not evaluate the trial court's approved remedy.

5

*id.* Appellant warns that to hold otherwise would subject vast expanses of unused wooded public lands to alienation. *See id.* at 5-7. Additionally, Appellant asserts that it is financially feasible to use the land as is because no improvements need to be made and the Township failed to present evidence that maintaining the land imposes a significant financial burden. *Id.* at 3-4.

Olympus (and the orphans' court) appears to adopt a narrower view. According to Olympus, an overgrown flood-prone area cannot be used for park or recreational purposes, and the public did not use the Subject Property. *See* Olympus's Br. at 12-15. Accordingly, it is not physically feasible to use the Subject Property as it currently is. *Id.* Additionally, it is not financially feasible to use the Subject Property for park and recreational purposes because improvements would need to be made for which funds have not been earmarked. *Id.* Thus, it is not physically or financially feasible to use the Subject Property for its park and recreational purpose. *See id.* at 14-15.

We agree with Appellant that public lands need not be improved or regularly used to comport with park and recreational use. "A public park may be defined as a tract of ground kept more or less in its natural state, or embellished by the planting of additional trees and flowers and devoted to the purposes of pleasure, recreation and amusement." *Borough of Ridgway v. Grant*, 425 A.2d 1168, 1171 (Pa. Cmwlth. 1981) (quoting *Bernstein v. Pittsburgh*, 77 A.2d 452, 455 (Pa. 1951)). It "may provide for pleasure, recreation and amusement in many forms." *Id.* at 1172; *see also Bernstein*, 77 A.2d at 455 ("[T]he principal purpose of a park, namely, public recreation, is not limited to physical recreation but includes aesthetic recreation and mental and cultural entertainment as well."). Further, recreational use can occur on unimproved lands. *In re Twp. of Jackson*, 280 A.3d 1074, 1088

6

(Pa. Cmwlth. 2022). "Recreation" is defined as "refreshment of strength and spirits after work" or "a means of refreshment or diversion." *Id.* (quoting Merriam-Webster's Collegiate Dictionary). "Refreshment takes many forms[,]" and "can take place on unimproved lands." *Id.*; *see also* 53 P.S. § 3381 (defining "lands" as "all real estate, whether improved or unimproved.").

Here, the orphans' court erred in concluding that it was no longer practicable to use the Subject Property for its intended park and recreational purpose. The court found that the Subject Property was "in a floodplain that is entirely covered by woods and underbrush[,]" and that the Subject Property was "never used." Orphans' Ct. Op. at 3. While these factual findings are entitled to deference, they do not support a legal conclusion that such land cannot be used for park and recreational purposes.

In our view, the orphans' court failed to appreciate that the existence of natural unimproved land is itself a recreational use. *See Grant*, 425 A.2d at 1171-72; *In re Twp. of Jackson*, 280 A.3d at 1088. Public lands used for park and recreational purposes are not limited to those lands that have been improved or are actively used. Thus, it is physically feasible to use the Subject Property for its park and recreational purposes. It is also financially feasible. The Township offered no evidence of any significant financial burden necessary to maintain the Subject Property. Simply, there is no need for improvements to the Subject Property; it is suitable for park and recreational purposes in its current natural state. Finally, we recognize that the Subject Property constitutes a small portion of Blythedale Park. However, "[t]he size of the area used is not the critical factor. It is the nature of the use that governs." *Grant*, 425 A.2d at 1172.

7

## IV. CONCLUSION

For these reasons, we conclude that the orphans' court erred as a matter of law in concluding that it was no longer practicable or possible to use the Subject Property for its intended park and recreational purpose. *See In re Twp. of Jackson*, 280 A.3d at 1088. Accordingly, we reverse.[8] *In re Est. of Ryerss*, 987 A.2d at 1237 n.12.

_____
**LORI A. DUMAS, Judge**

---

[8] Based on our disposition, we need not reach the second issue.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Blythedale Park        :
                                        :   No. 332 C.D. 2020

Appeal of:                      :

Protect Elizabeth Township  :

## O R D E R

AND NOW, this 5th day of June, 2025, the order of the Court of Common Pleas of Allegheny County, entered December 23, 2019, is REVERSED.

_____

**LORI A. DUMAS, Judge**

In Re: Blythedale Park   : 
  :   No. 332 C.D. 2020
Appeal of: Protect Elizabeth   :   ARGUED:  October 8, 2024
Township   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE LORI A. DUMAS, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**<u>OPINION NOT REPORTED</u>**

**DISSENTING OPINION BY**
**SENIOR JUDGE LEADBETTER**      **FILED:  June 5, 2025**


    I respectfully dissent from the well-written opinion of the majority. I agree with its analysis concerning the ability to use the park in its current state, i.e., that its original intended purpose as a recreational park is still viable. Such a determination should ordinarily require reversal. However, this easement is so *de minimis* and so beneficial that it seems absurd to block it, especially since, as the majority notes, it is the only place in Elizabeth Township suitable for the needed pumping station. Moreover, the pumping station, small as it is (20 feet by 32 feet, .037 out of 20 acres), would not interfere with the recreational use identified by the majority, i.e., preservation of unimproved land. Accordingly, I would affirm.


         _____
         **BONNIE BRIGANCE LEADBETTER,**
         President Judge Emerita