IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ann Feldman and Kim Manufacturing : 
Company Stewart Hall, L.P. : No. 1498 C.D. 2015
and The Board of Supervisors of : Argued: February 8, 2016
East Caln Township and Progressive : 
Housing Ventures, LLC and J. Loew : 
and Associates, Inc. and The Borough : 
Council of the Borough of Downingtown : 
: 
Appeal of: Ann Feldman : 


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: April 18, 2016


Ann Feldman (Objector) appeals the order of the Court of Common Pleas of Chester County (trial court) affirming the Board of Supervisors (Board) of East Caln Township's (Township) decision that granted the conditional use application[1] of Progressive Housing Ventures, LLC and J. Loew & Associates, Inc.

---

[1] Section 603(c)(2) of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10603(c)(2) states, in relevant part:

> Zoning ordinances may contain . . . provisions for conditional uses to be allowed or denied by the governing body . . . pursuant to express standards and criteria set forth in the zoning ordinance. . . . In allowing a conditional use, the governing body may attach such reasonable conditions and safeguards . . . in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance[.]

**(Footnote continued on next page…)**

and the Borough of Downingtown (Borough) (collectively, Developers) to

_____

**(continued…)**

*See also* Section 909.1(b)(3) of the MPC, added by the Act of December 21, 1988, *as amended*, 53 P.S. §10909.1(b)(3) ("The governing body . . . shall have exclusive jurisdiction to hear and render final adjudications . . . [on a]pplications for conditional use under the express provisions of the zoning ordinance pursuant to section 603(c)(2)."); Section 913.2(a), added by the Act of December 21, 1988, *as amended*, 53 P.S. §10913.2(a) ("Where a governing body, in zoning ordinances, has stated conditional uses to be granted or denied by the governing body pursuant to express standards and criteria, the governing body shall hold hearings on and decide requests for such conditional uses in accordance with such standards and criteria. . . . In granting a conditional use, the governing body may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act in the zoning ordinance.").

As this Court has explained:

> A conditional use is a special exception which falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board. The municipal legislative body may grant a conditional use pursuant to express standards and criteria set forth in the zoning ordinances enacted pursuant to the police powers to regulate land use. The fact that a use is permitted as a conditional use, rather than prohibited, reflects a legislative decision that the use is not *per se* adverse to the public interest.

> In order to demonstrate that the applicant is entitled to the conditional use, the applicant initially bears the burden of establishing that the application complies with the objective standards and criteria of the particular ordinance. Satisfaction of the applicant's burden establishes a legislative presumption that the use is consistent with the health, safety, and welfare of the community. Once the applicant has satisfied this initial burden, the burden shifts to the objectors to rebut this presumption by establishing that the use will have a detrimental impact on the surrounding community.

*In re Richboro CD Partners, L.P.*, 89 A.3d 742, 745 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014) (citations omitted).

construct multi-family dwelling units on a parcel of land in the Township.[2] We affirm.

Developers are the equitable owners of a 7-acre parcel in the Township's R-4 Low Density Cluster Residential zoning district, Tax Parcel 40-1-23, that the Borough originally condemned and currently uses for composting and storage. This parcel was never part of Kardon Park. Developers propose to build 70 multi-family dwellings on the property. This is a permitted conditional use in the R-4 zoning district under Sections 225-7.B.(3)(d) and 225-7.F. of the Township's Zoning Ordinance. However, the Zoning Ordinance requires a gross tract area of 20 acres.

---

[2] This appeal is the latest chapter in a line of cases involving the development of a number of parcels of property in and near Kardon Park, located partly in the Borough and partly in the Township. In *Feldman v. Board of Supervisors of East Caln Township*, 48 A.3d 543 (Pa. Cmwlth. 2012), *appeal denied*, 71 A.3d 245 (Pa. 2013), this Court reversed the trial court's affirmance of an earlier Board decision granting a conditional use application for the development because restrictions under the Project 70 Land Acquisition and Borrowing Act (Project 70 Act), Act of June 22, 1964, Special Sess., P.L. 131, 72 P.S. §§3946.1-3946.22, precluded the use of Tax Parcel 40-1-23.1 to meet open space or storm water management requirements of the Township's Zoning Ordinance. In *Borough of Downingtown v. Friends of Kardon Park*, 55 A.3d 163 (Pa. Cmwlth. 2012), *appeals denied*, 63 A.3d 1241 (Pa. 2013), this Court vacated the trial court's order denying the Borough's petition for approval of the sale and remanded because, *inter alia*, the trial court failed to consider Project 70 Act with respect to the alienation of Tax Parcels 11-4-23 and 40-1-23.1 and whether construction, maintenance, and utility easements over, under, and through Tax Parcels 11-04-23 and 40-1-23.1 were inconsistent with its park use. In *In re Council of the Borough of Downingtown*, (Pa. Cmwlth., No. 2205 C.D. 2011, filed June 18, 2013), this Court vacated a trial court order declaring that no court approval was needed and that the Donated or Dedicated Property Act (DDPA), Act of December 15, 1959, P.L. 1772, *as amended*, 53 P.S. §§3381-3384, and the Public Trust Doctrine were not implicated by the easements, and we remanded for further consideration. In *Petition of the Borough of Downingtown*, 116 A.3d 727 (Pa. Cmwlth. 2015), *appeals granted*, ___ A.3d ___ (Pa. Nos. 358-361 MAL 2015, 410-413 MAL 2015, 424-427 MAL 2015, filed February 17, 2016), this Court affirmed the portion of the trial court's order holding that the DDPA did not apply to the Borough's sale of a portion of Tax Parcel 40-1-23.1 or the easements with respect to Tax Parcels 11-4-23 and 40-1-23.1.

3

The application proposes to use the adjacent 14.2-acre Tax Parcel 40-1-23.1, part of Kardon Park that was purchased with Project 70 Act funds,[3] and 1.6 acres of the 7.6-acre Tax Parcel 11-4-23, also part of the park, to satisfy this requirement. An agreement between the Borough and Developers (Agreement) will convey Tax Parcel 40-1-23 and 3 adjoining acres to Developers,[4] but the Borough will retain ownership of the remaining acreage for park use. Developers propose improvements for those portions of Kardon Park that are included in the development plans, including moving and extending the Lions Trail, a paved walking, jogging, and biking trail, to replace the existing trail and the construction of additional parking for the park.

A pond known as "Fourth Lake" is located on Tax Parcel 40-1-23.1 and a portion of "Third Lake" is on Tax Parcel 11-4-23. There is also a "forebay" or "Fifth Lake" immediately north of Fourth Lake which is located on both Tax Parcels 40-1-23 and 40-1-23.1. The ponds were originally fed by a man-made diversion from the Brandywine River to power mills in the area, but they are now fed mostly by untreated storm water runoff from an adjacent subdivision and the Route 30 Bypass. Developers propose to improve the water quality of the forebay and Fourth Lake through the use of additives and plantings. They also propose the

---

[3] Section 2(4) of the Project 70 Act authorizes the Commonwealth to incur debt to assist political subdivisions with acquiring land for recreation, conservation, and historical purposes. 72 P.S. §3946.2(4). Section 20(b) restricts the political subdivisions from disposing of or using this land for any other purposes without the General Assembly's approval. 72 P.S. §3946.20(b).

[4] The Agreement provides, in relevant part, that "'Parcel 2' consists of approximately 3.0 acres located in [the] Township and is identified as being within Tax Parcel No. 40-1-23.1 and a part of Tax Parcel No. 11-4-23 as schematically depicted on the Tax Parcel Plan," and that "'Parcel 3' consists of approximately seven (7.0) acres located in [the] Township and is identified as Tax Parcel No. 40-1-23 . . . ." Reproduced Record (R.R.) at A-1051.

use of best management practices (BMPs) on Tax Parcel 40-1-23, such as amended soils and rain gardens for storm water discharge associated with the development to diminish the impact on Fourth Lake and the other lakes in the park.[5]

The property was formerly used as a quarry and unregulated landfill so a significant amount of the property is currently contaminated. Developers propose substantial remediation of the majority of the contaminated portions of the property. Developers also propose to use the adjacent Borough park land as open space to meet the requirements of the Township's Zoning Ordinance.[6]

---

[5] With respect to storm water management, Section 225-7.F.(3)(f) of the Township's Zoning Ordinance provides that "[t]he control of erosion and sediment during construction, and the ongoing management of stormwater on the tract, shall be accomplished in accordance with the [Township's] Subdivision and Land Development Ordinance [(SALDO)] (Chapter 185). . . ."

[6] Section 225-3 of the Zoning Ordinance defines "open space" as "[a]n area to remain in a substantially undeveloped condition in perpetuity providing for natural resource preservation and/or passive recreational uses including public access to same." Section 225-7.F.(1)(f) states that "[a] minimum of 40% of the tract area shall consist of open space, complying with the provisions of §225-7 F.(4)." Section 225-3 defines "tract" as "[o]ne or more lots assembled for the purpose of development under provisions of this chapter." In turn, Section 225-7.F.(4) provides, in pertinent part:

> (a)    A minimum of 40% of the tract to be developed shall be designed, restricted and used as open space ("open space").
>
> (b)    Areas counted for the open space requirement may be used in whole or in part for passive recreational uses and for natural resource preservation. . . .
>
> * * *
>
> (f)    Open space may be dedicated to the Township if accepted by the Township or to the [Borough] if not accepted by the Township. Proposed open space already owned by the Borough may be retained in the Borough's ownership.

**(Footnote continued on next page…)**

In addition to conveying title to Tax Parcel 40-1-23, the Agreement grants construction, maintenance, and utility easements over, under, and through the portions of Tax Parcels 11-4-23 and 40-1-23.1 that are retained by the Borough, subject to the Township's approval of the proposed development.[7] To

---

**(continued…)**

> (g)    In the event that the open space is not accepted by the Township or the [Borough], the landowner shall provide for and establish an organization for the ownership and maintenance of the open space. Such organization shall not be dissolved nor shall it, or the Borough, dispose of the open space by sale or otherwise . . . except by dedication to the Township. . . . All property owners within the multifamily development shall be members of said organization. The organization may lease open space lands to the developer or other qualified person or corporation for operation and maintenance of open space lands . . . .

[7] The Agreement states, in relevant part, that "[t]he Park Property shall at Closing be subject to such easements to be granted to Buyer (collectively, the 'Development Easements') as may be necessary for the installation of stormwater management facilities, wetlands plantings, walkways, public parking, grading, utilities and, if required, extension of a public street . . . ." R.R. at A-1051. The Agreement also provides:

> (iv) The homeowners' association [(HOA)] shall be obligated by recorded covenant ("Park Maintenance Covenant") to maintain the stormwater management facilities and wetlands plantings. The [HOA] shall have the right, but not the obligation to enter upon and perform general open space maintenance activities with the approval of, and subject to such reasonable conditions as may be imposed, by Seller.

> (v) Consistent with Parcel 1 Approval, the Park Maintenance Covenant shall include a financial commitment of the [HOA] to contribute annually to the cost of maintaining the Park Property the extent and nature of which financial commitment shall be mutually approved by Buyer and Seller during the Public Approvals process. . . .

**(Footnote continued on next page…)**

that end, Developers filed the instant application for conditional approval of the multi-family dwellings.[8]  Objector was granted party status and a number of hearings before the Board ensued at which a number of witnesses, including Objector, testified and a number of exhibits were introduced.[9]

_____

**(continued…)**

*Id.* at A-1052.

[8] Prior to the filing of the application, the General Assembly enacted the Act of June 18, 2014, P.L. 747, which released the Project 70 Act restrictions on Tax Parcel 40-1-23.1 subject to the following conditions:  (1) the Project 70 Act restrictions removed shall be for $285,000 which is the fair market value of the restrictions as established by an appraisal by a certified real estate appraiser; (2) any land sold by the Borough without the restrictions shall be for an amount equal to or greater than the foregoing amount; (3) the sale proceeds shall be deposited into an interest-bearing account by the Borough; (4) the funds shall be used by the Borough solely for improvements to Kardon Park in accordance with a development plan; and (5) the Borough shall certify that an area of land of not less than 20 acres has been deed restricted for a public park use and recorded.

[9] As summarized by the trial court:

> During the Hearing, [Developers] submitted and presented a number of plans and various reports, including 30 exhibits that were accepted into the record, including, among others, the following:  Revised Conditional Use Plan for Kardon Ponds – Phase 1, Layout Comparison Plan of "The Millrace," Written Site Concept Design Standards Report, Landscape Plan (Phase 1) for the Mill Race at Kardon Ponds, Conditional Use Narrative Report, Conceptual Stormwater Management Report, DEP Approval Letter of Cleanup Plan, Post Remediation Care Plan, Fiscal Impact Analysis, Traffic Impact Study, Approximate Limit of Contaminated Fill Plan, Phase 1 Environmental Remediation Plan, Wetlands Creation and Mitigation Plan and Cleanup Plan for Kardon Park Site.
>
> [Developers] also presented the testimony of several expert witnesses who testified to [Developers'] compliance with the conditional use standards set forth in the Zoning Ordinance, all of

**(Footnote continued on next page…)**

In March 2015, the Board issued a decision granting Developers' application and imposing a number of conditions on development including, *inter alia*:

> •  Developers shall comply with their testimony and exhibits and must obtain final SALDO approval in accordance with the Township's Zoning and SALDO regulations including the execution of financial security and development agreements and the recording of all required easements and restrictive covenants;
>
> •  to the extent that improvements, including the rain garden above the forebay, are proposed within the floodplain, the improvements shall be relocated outside the floodplain unless permitted by the Army Corps of Engineers, a map revision based on a site delineation of

---

**(continued…)**

> whom were admitted as expert witnesses without objection by [Objector]. The reports along with the testimony of [Developers'] expert witnesses more than met their burden of demonstrating compliance with the specific Zoning Ordinance criteria.
>
> \* \* \*
>
> The only testimony presented by [Objector] and Kim was that of [Objector], Sarah Brown, and Donald Greenleaf, all of whom offered nothing more than lay testimony, i.e., mere speculation, unsupported allegation and personal opinion, as to the development proposal. This is insufficient to meet the heavy burden placed on objectors in zoning proceedings. . . . The fact that [Objector], in her personal opinion, disagrees with the expert testimony and reports offered by [Developers] is insufficient to justify the denial of the Application, and the Board did not commit an error of law or abuse its discretion in determining that [Developers] were entitled to the grant of the requested conditional use approval.

R.R. at A-35, A-38.

8

the floodplain, or the Township's Zoning Hearing Board if appropriate for encroachments into the flood fringe portion of the floodplain;

• so long as the Borough retains park land as required by the decision, the Development's HOA shall not control the Borough's maintenance or management, but upon Borough approval, the HOA may be delegated the responsibility to maintain Fourth Lake and the forebay with reasonable expenses credited against the HOA's maintenance obligation for park land;

• except as provided above, the Borough shall be solely responsible for maintaining all proposed park lands subject to any right of contribution from the HOA, but the Borough's failure to collect the HOA contribution shall not relieve the Borough of its maintenance responsibilities;

• Developers shall ensure the removal of any Project Act 70 deed restrictions including the timely payment of $285,000 pursuant to the release of the property from any Act 70 restrictions; and

• a fence with child proof self-closing and self-latching gates shall be installed and maintained between the housing units and Fourth Lake.[10]

*See* R.R. at A-67-A-75. Objector appealed the Board's decision to the trial court and, following a hearing, the trial court affirmed the Board's decision. Objector then filed the instant appeal.[11, 12]

---

[10] This condition was based on the Board's finding that the proximity of the proposed dwellings to the forebay and Fourth Lake results in inadequate separation between the dwellings and the water particularly with respect to the safety of young children. R.R. at A-61.

[11] In a land use appeal where the trial court does not take additional evidence, our review is limited to determining whether the local governing body abused its discretion or committed an error of law. *In re Thompson*, 896 A.2d 659, 666 n. 4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 636 (Pa. 2007). In conditional use proceedings where the trial court has taken no additional evidence, the governing body is the finder of fact empowered to judge the credibility of the **(Footnote continued on next page…)**

# I.

Objector first claims that in its opinion affirming the Board's decision, the trial court adopted verbatim Developers' brief written by a former law partner in violation of the court's duty to act impartially and fairly and to avoid the appearance of impropriety. Objector argues that the trial court's verbatim adoption of that brief as an opinion violates due process because it is not the result of the trial court's independent judgment and precludes this Court from exercising effective appellate review. As a result, Objector submits, this Court must reverse the trial court's order and remand the matter for another judge to conduct an independent analysis of the Board's decision.

However, in Pennsylvania it is presumed that a judge is unbiased and impartial, *Beharry v. Mascara*, 516 A.2d 872, 875 (Pa. Cmwlth. 1986), *appeal denied*, 527 A.2d 548 (Pa. 1987), and that a judge has the ability to assess his or her ability to make rulings impartially and without prejudice. *Commonwealth v. Tedford*, 960 A.2d 1, 55 (Pa. 2008). Additionally, it is well settled that a party seeking recusal or disqualification of a trial judge must raise the objection at the earliest possible moment or the claim will be regarded as time barred. *Reilly v.*

---

**(continued…)**

evidence and the weight it should be afforded; a court may not substitute its interpretation of the evidence for that of the governing body. *In re Richboro CD Partners, L.P.*, 89 A.3d at 754-55. The governing body abuses its discretion when its findings of fact are not supported by substantial evidence. *In re Thompson*, 896 A.2d at 666 n.4. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).

[12] Kim Manufacturing Company and Stewart Hall, L.P. filed a Notice of Non-Participation in Objector's appeal. Pursuant to Pa. R.A.P. 2137, the Borough Council joined in and adopted by reference Developers' appellate brief.

*Southeastern Pennsylvania Transportation Authority*, 489 A.2d 1291, 1300 (Pa. 1985). "Once the trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unfavorable result." *Id.* (citation omitted). Objector has failed to allege or demonstrate that she objected to the trial court's consideration of her appeal prior to its disposition so any allegation of error in this regard has been waived.

Moreover, our review of the record demonstrates that the trial court disposed of this matter in a just and expeditious manner and in conformity with due process. In its supplemental Pa. R.A.P. 1925(a) opinion, the trial court outlined the independent judgment that was exercised and listed the chronology of its review of the case over a seven-week period prior to oral argument. *See* R.R. at 2-3. As a result, the trial court did exercise independent judgment in disposing of Objector's appeal and merely adopted Developers' brief as its opinion "because it exactly expressed what the court wanted to say in its decision" and because the "brief was also particularly lucid." *Id.* at 3.

## II.

Objector next claims that the Board erred in granting the conditional use application because the open space, minimum tract size, and storm water management requirements were met through an easement on adjacent Borough park land, which requires court approval under the DDPA and the Public Trust Doctrine. *See In re Erie Golf Course*, 992 A.2d 75 (Pa. 2010) (requiring Orphans' Court approval for a private developer to use or sell public park land already used for a public use); *Board of Trustees of Philadelphia Museums v. Trustees of the*

11

*University of Pennsylvania*, 96 A. 123 (Pa. 1915) (precluding the sale or use of public park land while still in active use).[13] Objector also asserts that Developer alleges that the park will not be used for storm water management but that is unlikely, and Fourth Lake will ultimately be the main source of the development's storm water management. Objector concludes that Developer is impermissibly seeking to use the park to satisfy its private responsibilities. *See White v. Township of Upper St. Clair*, 799 A.2d 188 (Pa. Cmwlth. 2002) (holding that the lease of park land for the construction of a communications tower as a sale or alienation under the DDPA).

---

[13] As this Court has explained:

> "Under the common law public trust doctrine, when land has been dedicated and accepted for public use, a political subdivision is estopped from interfering with or revoking the grant at least so long as the land continues to be used, in good faith, for the purpose for which it was originally dedicated." *In re Estate of Ryerss*, 987 A.2d 1231, 1237 n.8 (Pa. Cmwlth. 2009) (citation omitted).

> \* \* \*

> Regarding the common law "public trust doctrine," we explained in [*Borough of Downingtown*], that our Supreme Court held in [*In re Erie Golf Course*] that the DDPA incorporates the "salient common-law principles" of the public trust doctrine and, "[t]o the extent the [DDPA] modifies the public trust doctrine, the prior common-law principles are superseded." *Id.* [992 A.2d at 86 n.16].

*In re Council of the Borough of Downingtown*, slip op. at 2 n.1, 8 n.13. Objector asserts that the instant easements are clearly alienations or restrictions on park land within the purview of the DDPA. *See Assalita v. Chestnut Ridge Homeowners Association*, 866 A.2d 1214 (Pa. Cmwlth. 2005) (holding that an easement appurtenant is also an encumbrance that can conceivably last forever).

However, regarding the open space requirement, Section 225-7.F.(4)(f) of the Township's Zoning Ordinance specifically permits the use of Borough land to satisfy this requirement, stating "[o]pen space may be dedicated to the Township if accepted by the Township or to the [Borough] if not accepted by the Township," and "[p]roposed open space already owned by the Borough may be retained in the Borough's ownership." Section 225-7.F.(4)(b) also provides that "[a]reas counted for the open space requirement may be used in whole or in part for passive recreational uses and for natural resource preservation. . . ." *See Morris v. South Coventry Township*, 836 A.2d 1015, 1018 (Pa. Cmwlth. 2003) (holding that the applicable zoning ordinance did not preclude ownership of open space by neighboring residential lots in a preliminary land approval).

We previously held that the use of the adjoining park land to satisfy the open space requirement of the Township's Zoning Ordinance does not violate the DDPA, explaining:

> As to the use of [a] portion of parkland to satisfy an open space requirement, while that may be problematic in the land use sense, the matter before us is whether the use of open space will substantially impede the public's use of the property as a park in violation of the DDPA. There is nothing to indicate that allowing Developer to use the property to satisfy the open space requirement for the adjoining residential development will have any impact whatsoever on the park use.

*In re Borough of Downingtown*, 116 A.3d at 743.

Likewise, this Court has also rejected Objector's argument that the use of easements violates the DDPA with respect to these parcels, explaining:

> Neither the utility or storm water easements in any way impede with the use of Kardon Park because the construction easements are temporary; the maintenance

> easements allow access and are not intrusive; and the utility easements are underground. As to the storm water easements, those easements may well require changes in Kardon Park, but none of those changes are inconsistent with the use of the property as a park. While there may be a reduced shoreline at the Fourth Lake, there are new vegetative wetlands that serve a park purpose; while part of the Lions Trail will be relocated, there will still be a trail; and while there will be new parking areas, they will allow individuals to access Kardon Park. Nothing requires that the property be used in the way Objectors believe Kardon Park should be used, just that it be used as a park.

*In re Borough of Downingtown*, 116 A.3d at 743. Again, this would apply equally to Objector's Public Trust doctrine claim. *Id.* at 739 n.18. Moreover, Developers demonstrated that the development does not involve the use of Fourth Lake for storm water management purposes. R.R. at A-316-322, A-334, A-1162-1203.[14]

Finally, with respect to the sale of a portion of Tax Parcel 40-1-23.1, this Court held that "[t]he releases of the General Assembly essentially voided the dedication required under the Project 70 Act and permit the conveyance of these

---

[14] The Board imposed the following conditions with respect to storm water management:

> 7. Final design of [Developers'] storm water management improvements, including the enclave area "sponge," and [Developers'] reliance on evapotranspiration, shall be subject to Township approval at the time of Final Subdivision and Land Development Approval; including compliance with [the] Township's Act 167.

R.R. at A-68. The Board's action in this regard was appropriate. *See* Robert S. Ryan, 1 Pennsylvania Zoning Law and Practice §5.2.7 (2004) ("Where the only valid reason for denying a special exception relates to the drainage of surface waters, and the evidence indicates that the problem can be solved by the imposition of conditions governing the diversion of surface waters, the zoning board must grant a special exception subject to the conditions rather than deny it outright. *Sibley v. Plymouth Township*, 92 Montg. Co. L.R. 33 (1969).").

14

parcels. To hold that these parcels are also subject to the disposition requirements of the DDPA would render section 20 of the Project 70 Act a nullity." *In re Borough of Downingtown*, 116 A.3d at 739. This applies equally to Objector's claim regarding the Public Trust doctrine. *Id.* at 739 n.18 (quoting *Borough of Downingtown*, 55 A.3d at 173).[15] In sum, the Board did not err in granting the conditional use application where, as here, Developers met the requirements of the Township's Zoning Ordinance and it was not shown, with a high degree of probability, that the use will adversely impact the public interest. *See, e.g., Brentwood Borough v. Cooper*, 431 A.2d 1177, 1179-80 (Pa. Cmwlth. 1980) (holding that applicant was entitled to grant of a conditional use permit to construct garden apartments where the specific requirements of the zoning ordinance were met notwithstanding the borough's concerns regarding traffic congestion, storm sewer problems, fire hazards, and diminishment of the tax base).[16]

---

[15] We have specifically rejected Objector's reliance on *White*, stating:

> While the parcels at issue in this case were similarly dedicated to a public park use, unlike the land in *White*, the parcels herein were actually acquired with Project 70 Act funds. When applied, the Project 70 Act contains specific provisions whereby the General Assembly has authorized a political subdivision to dispose of lands acquired with such funds. The Borough complied with these provisions and obtained the appropriate releases under the Project 70 Act. As noted above, these releases essentially voided the public dedication of these parcels, rendering *White* distinguishable.

*In re Borough of Downingtown*, 116 A.3d at 740.

[16] As a corollary to this claim, Objector argues that the proposed rain garden and road in the floodplain are also illegal because they are not permitted uses in this area under Section 225-24(c) of the Township's Zoning Ordinance and violate federal regulations, 44 C.F.R. §60.3 (relating to flood plain management criteria for flood-prone areas), requiring permits for such construction. The Board found that "Objectors have raised valid concerns about the possible **(Footnote continued on next page…)**

Objector next claims that the Board erred in granting the application because the requirements for the use of the portion of the park land purchased with Project 70 Act funds have not been satisfied. Objector argues that the General Assembly removed the Project 70 Act restrictions on Tax Parcel 40-1-23.1 through the Act of June 18, 2014, but imposed the condition that the Borough deposit $285,000 into an interest-bearing account to be used for improvements to Kardon Park in accordance with a development plan. Objector asserts that the money has not been deposited so the condition has not been met and the restrictions on the alienation of that parcel have not been removed.

This Court has previously held that the removal of the Project 70 Act restrictions could not be a condition for final approval of the development because the General Assembly could not be compelled to enact the legislation removing the restrictions. *Feldman*, 48 A.3d at 550-51. However, as noted above, the General Assembly enacted the Act of June 18, 2014, which released the Project 70 Act

---

**(continued…)**

installation of improvements within the floodplain on the Property." R.R. at A-61. As a result, the Board imposed the following condition to address these concerns:

> 6. To the extent proposed improvements, including but not limited to the rain garden above Fourth Lake forebay, are proposed within the floodplain, such improvements shall be relocated outside the floodplain unless otherwise permitted by the Army Corps of Engineers, by a map revision based upon a site delineation of the floodplain, or by the Township Zoning Hearing Board if appropriate for encroachments into the flood fringe portion of the floodplain.

*Id.* at A-68. Again, the Board's action in this regard was appropriate. *See* fn.14 *supra*.

restrictions on Tax Parcel 40-1-23.1 subject to a number of conditions. Because the Project 70 Act restrictions have been conditionally removed by the General Assembly, they are no longer an impediment to the use of this parcel as part of the development. *In re Borough of Downingtown*, 116 A.3d at 739.

Moreover, this Court has explained that only the Commonwealth, and not a private citizen, has the authority to enforce the Project 70 Act use restrictions. *Borough of Downingtown*, 55 A.3d at 173-74; *Feldman*, 48 A.3d at 449. As a result, to the extent that the Project 70 Act restrictions are still in place, the Commonwealth, and not Objector, has the authority to enforce the restrictions on the use of the parcel.

## IV.

Objector next claims that the Board erred in granting the application because the HOA cannot have responsibility for maintaining the open space and water management requirements on public park land. Objector argues that using public park land to satisfy a developer's requirements is not in the public's interests and violates a number of zoning ordinance provisions protecting such interests. Objector contends that the Borough will ultimately give control over the use of public park land to the HOA and that there is no precedent allowing an HOA to control the funds and improvements on public park land. Objector also asserts that access to the lakes will be severely restricted, thereby impacting the public's use of the park, and the HOA's control over park upkeep will have a further negative impact.

As outlined above, Section 225-7.F.(4)(b) of the Zoning Ordinance provides that "[a]reas counted for the open space requirement may be used in

17

whole or in part for passive recreational uses . . . ." Section 225-7.F.(4)(f) provides that "[p]roposed open space already owned by the Borough may be retained in the Borough's ownership." Moreover, Section 225-7.F.(4)(g) specifically contemplates that the HOA may own and maintain the open space if the open space is not accepted by the Township or the Borough. Finally, the Board imposed a condition that "the [HOA] shall have no control over the Borough's maintenance and management of such park land; provided, upon approval by the Board, the [HOA] may be delegated the responsibility for maintenance of Fourth Lake and its forebay, with any reasonable expenses credited against any HOA maintenance obligation for the park land." R.R. at A-69. Contrary to Objector's assertion, the conditional use and condition conform to the Township's Zoning Ordinance.

## V.

Finally, Objector argues that the Board erred in granting the conditional use application because such use violates Article 1, Section 27 of the Pennsylvania Constitution. However, the entirety of Objector's argument on this issue is as follows:

> Clearly, allowing a private developer to use public parkland and public resources for private gain which will only be given to the [HOA] to maintain is wrong and in clear violation of this particular Constitutional provision.

> * * *

> The Board of Supervisors of [the] Township erred in allowing public parkland to be used for private use which violated Article I, Section 27 of the Pennsylvania Constitution, which gives the people the right to clean

18

air, water, etc., and preservation of the natural environment.

Brief of Appellant at 73, 79-80.

Objector has waived this claim by failing to cite legal authority or otherwise develop any discussion in support of this constitutional issue in the Argument portion of her brief. *See* Pa. R.A.P. 2119(a) ("The argument . . . shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *In re Estate of Ryerss*, 987 A.2d at 1236 n.7 (Pa. Cmwlth. 2009) (holding that arguments not properly developed in an appellate brief will be deemed waived by this Court under Pa. R.A.P. 2119(a)); *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (holding that the failure to cite pertinent authority results in waiver under Pa. R.A.P. 2119).

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ann Feldman and  Kim Manufacturing :
Company Stewart Hall, L.P. : No. 1498 C.D. 2015
and The Board of Supervisors of :
East Caln Township and Progressive :
Housing Ventures, LLC and J. Loew :
and Associates, Inc. and The Borough :
Council of the Borough of Downingtown :
 :
Appeal of: Ann Feldman :


# O R D E R


   AND NOW, this 18th day of April, 2016, the order of the Court of Common Pleas of Chester County dated July 27, 2015, is AFFIRMED.

               _____
               MICHAEL H. WOJCIK, Judge